# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-AN-01075-SCT

*IN THE MATTER OF THE ENLARGEMENT AND EXTENSION OF THE MUNICIPAL BOUNDARIES OF THE CITY OF D'IBERVILLE, MISSISSIPPI AND THE CITY OF BILOXI, MISSISSIPPI: CITY OF D'IBERVILLE, MISSISSIPPI*

*v.*

*CITY OF BILOXI, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/09/2002 |
| TRIAL JUDGE: | HON. J. SHANNON CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JERRY L. MILLS |
| | WALTER L. NIXON, JR. |
| ATTORNEYS FOR APPELLEE: | JAMES L. CARROLL |
| | ELIZABETH JANE HICKS |
| | MARY LARGENT PURVIS |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL - 03/04/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, P.J., COBB AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Today's appeal comes to us from a final judgment entered in annexation proceedings conducted by the Chancery Court of the Second Judicial District of Harrison County, Mississippi, which had consolidated for hearing  three separate petitions: (1) a petition for annexation filed by the City of

D'Iberville; (2) a petition for annexation for the exact same area filed by the City of Biloxi; and (3) a petition for inclusion into Biloxi of a smaller area within the proposed annexation area filed by residents of this smaller area. After a trial was held on the consolidated actions, the special chancellor awarded a portion of the proposed annexation area (PAA) to each city, including the inclusion area to Biloxi. The remainder of the PAA was denied to both cities. Both cities have appealed the chancellor's decision to deny the entire PAA to that city and the decision to grant a portion of the PAA to the other city. The inclusion petitioners have not participated in this appeal.

¶2.    In both the briefs and at oral argument, the parties have invited this Court to address the doctrine of prior jurisdiction as it relates to an annexation where there exist competing interests of more than one municipality. Because that doctrine is at issue us in the case before us today, we accept that invitation.

### FACTS AND PROCEEDINGS IN THE CHANCERY COURT

¶3.    Since this appeal involves the filing of three separate petitions concerning the annexation efforts of the City of D'Iberville and the City of Biloxi, the procedural history of each petition, as well as a petition filed by Harrison County, will be briefly discussed.

*(1) D'Iberville's Petition*:

¶4.    The City of D'Iberville was incorporated in 1988. The area of the city is approximately 4.7 square miles and, according to the 2000 census, had a population of 7,608 persons. In commencing its first annexation effort since incorporation, D'Iberville, on October 5, 1999, adopted an ordinance seeking to annex approximately 9.75 square miles to its north and west. On October 6, 1999, D'Iberville filed its petition for approval of the annexation in the Chancery Court of the Second Judicial District of Harrison County. The area sought to be annexed was an unincorporated area of Harrison County. The proposed annexation area (PAA) consisted of approximately 9.75 square miles, had a population of approximately

2

1,347 persons residing in 533 dwelling units, and had approximately 17 businesses. The PAA included a subdivision known as Wells Ferry Landing. Harrison County filed a Petition to Intervene on December 8, 1999, and that petition was granted on December 20, 1999. Thereafter, on March 1, 2000, Harrison County filed its Objection of Harrison County, Mississippi, To Petition For Ratification, Approval, and Confirmation of an Ordinance Extending and Enlarging the Boundaries of the City of D'Iberville.

*(2) Wells Ferry Landing's Petition*:

¶5.     Without objecting to the D'Iberville annexation, on October 19, 1999, a group of citizens residing in the Wells Ferry Landing subdivision filed a petition in the Chancery Court of the Second Judicial District of Harrison County seeking inclusion into the City of Biloxi. The area sought to be included in Biloxi consisted of a narrow east-west band, situated north of the existing city limits of D'Iberville. On November 17, 1999, the petition was amended, reducing the area sought to be included. The inclusion petition was filed under a separate action, and it made no reference to the annexation attempt of D'Iberville. Responsive pleadings to this inclusion petition were filed by Biloxi and D'Iberville on January 5, 2000.

*(3) Biloxi's Petition*:

¶6.     On December 29, 1999, Biloxi adopted an ordinance seeking to annex the entire PAA. As a third action in the chancery court, Biloxi filed its petition seeking approval of the proposed annexation on January 19, 2000. The area sought to be annexed was the same PAA as that sought by D'Iberville in its annexation petition. Biloxi's ordinance and annexation petition were both silent as to the D'Iberville proposed annexation, although Biloxi's annexation petition referred to the inclusion petition as support for Biloxi's annexation efforts.

¶7.     Previously in 1995, Biloxi sought to annex approximately 54 square miles, including the present PAA. After a trial, Biloxi's annexation petition was partially approved; however, the present PAA and

3

other territory was not included in the final judgment granting the annexation. We affirmed that decision on July 29, 1999. ***In re Enlargement & Extension of the Mun. Boundaries of the City of Biloxi,*** 744 So.2d 270 (Miss. 1999). After the annexation, Biloxi consisted of approximately 38 square miles. According to the 2000 census, Biloxi's population was 50,644.

¶8. Without objection from any of the parties, the chancery court consolidated the three actions. A trial was held before Special Chancellor J. Shannon Clark on July 16-19, 24-26, 31 and August 1-2, 2001. Harrison County and several individuals appeared at trial and objected to the annexation attempts. After the parties submitted proposed findings of fact and conclusions of law, the court entered its own Findings of Fact and Conclusions of Law on May 13, 2002. The Final Judgment Approving the Enlargement and Extension of The Boundaries of the City of Biloxi, Mississippi was entered on June 21, 2002, granting the annexation in part but including the territory outlined in the inclusion petition. The Final Judgment Approving the Enlargement and Extension of the Boundaries of the City of D'Iberville, Mississippi was entered on July 9, 2002, granting the annexation in part. Both D'Iberville and Biloxi have appealed these orders.

## ANALYSIS

### I.     Statutory Procedure for Annexation

¶9. The procedure for annexation is governed by Title 21, Chapter 1, of the Miss. Code Ann. Both D'Iberville and Biloxi adopted ordinances pursuant to Miss. Code Ann., § 21-1-27. Petitions were then filed with the chancery court, as required by Miss. Code Ann. § 21-1-29. Notices by each city were given by posting and publication pursuant to Miss. Code Ann. § 21-1-31. The petition for inclusion was filed pursuant to Miss. Code Ann. §§ 21-1-45 & -47 and the required two-thirds of the qualified electors residing in the territory executed the amended petition.

4

¶10.    At trial, each city bore the burden of proving that its proposed annexation was reasonable. Miss. Code Ann. § 21-1-33. This Court has determined reasonableness by utilizing the following twelve indicia:

(1)    the municipality's need for expansion;
(2)    whether the area sought to be annexed is reasonably within a path of growth of the city;
(3)    the potential health hazards from sewage and waste disposal in the annexed areas;
(4)    the municipality's financial ability to make the improvements and furnish municipal services promised;
(5)    the need for zoning and overall planning in the area;
(6)    the need for municipal services in the area sought to be annexed;
(7)    whether there are natural barriers between the city and the proposed annexation area;
(8)    the past performance and time element involved in the city's provision of services to its present residents;
(9)    the impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation;
(10)    the impact of the annexation upon the voting strength of protected minority groups;
(11)    whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes; and,
(12)    any other factors that may suggest reasonableness, vel non.

*In re Extension of the Boundaries of the City of Hattiesburg,* 840 So.2d 69, 82-83 (¶ 21) (Miss. 2003) (*City of Hattiesburg*) (citations omitted).    However, "[t]he ultimate determination must be whether the annexation is reasonable under the totality of the circumstances." *In re Corp. Boundaries of the Town of Mantachie*, 685 So.2d 724, 726 (Miss. 1996) (quoting *In re Extension of the Boundaries of the City of Columbus*, 644 So.2d 1168, 1172 (Miss. 1994)). "Totality of the circumstances" is not a thirteenth factor to be addressed by a chancellor in determining whether a municipality's annexation is reasonable. We have held that "[t]hese [12]factors, however, are only indicia of reasonableness, not separate and distinct tests in and of themselves." *Id.* at 81-82 (quoting *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss. 1989)).

5

¶11.    A chancellor has the authority to reduce the amount of territory sought to be annexed. Miss. Code Ann. § 21-1-33. In reviewing the chancellor's decision to grant, deny, or reduce the proposed annexation, this Court's standard of review is well established:

> This Court's standard of review for annexation is very limited. The Court can only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and is not supported by substantial and credible evidence. *In re Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So.2d 490, 494 (Miss.1995). We also stated "[w]here there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville*, 542 So.2d 918, 921 (Miss.1989). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Id.* at 921. "We only reverse where the Chancery Court has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

*City of Hattiesburg*, 840 So.2d at 81 (¶ 18).

## II.    Prior Jurisdiction

¶12.    D'Iberville asserts that although the three petitions were consolidated for trial, its petition was filed first and thus the D'Iberville filing was entitled to priority consideration by the chancellor. D'Iberville relies on a treatise which states:

> The rule that among separate equivalent proceedings relating to the same subject matter, that one which is prior in time is prior in jurisdiction to the exclusion of those subsequently instituted, applies, generally speaking, to and among proceedings for the municipal incorporation, annexation, or consolidation of a particular territory. In proceedings of this character, while the one first commenced is pending, jurisdiction to consider and determine others concerning the same territory is excluded. Thus, where two or more bodies or tribunals have concurrent jurisdiction over a subject matter, the one first acquiring jurisdiction may proceed, and subsequent purported assumptions of jurisdiction in the premises are a nullity. This principle of the common law is based upon the general public policy of the promotion of the orderly administration of government and justice. Thus, the first of two or more annexation proceedings prevails over those subsequently commenced relating to the same territory.

6

The prior jurisdiction rule applies where the proceedings are equivalent. If they are not equivalent, the prior jurisdiction rules does not apply. Thus, the "first step" rule may not be followed as between conflicting petitions, one which is voluntary, the other involuntary. ...

The jurisdictional priority based on priority in time ordinarily is determined by the time of the commencement or initiation of the proceedings, and not by the time of completion, nor by another time or date. However, in some instances a time other than the time the proceedings are commenced is said to be determinative of jurisdictional priority. The taking of the first mandatory public procedural step in the statutory process for incorporation or annexation of territory ordinarily fixes the date of the commencement of the proceedings, for the purposes of the rule as to jurisdictional priority.

Eugene McQuillin, The Law of Municipal Corporations § 7.22.20, at 508-09 (3d ed. 1996) (footnotes omitted). D'Iberville also relies on this Court's decision in *Incorporation of Forest Hill v. Fields*, 280 So.2d 837, 838 (Miss. 1973). In *Forest Hill*, we found:

The doctrine of 'prior jurisdiction' also supports the decree appealed. Where two inconsistent petitions involving the same territory are pending, it is proper to decline to consider the later one until there is a disposition of the earlier one. It is held that where a petition for incorporation of territory into a new municipality was filed and pending before the institution of annexation proceedings involving the same territory, such annexation proceedings may not be taken until disposition of the proceedings seeking incorporation.

*Id*. at 838 (citing *City of Daytona Beach v. City of Port Orange*, 165 So.2d 768, 771 (Fla. Dist. Ct. App. 1964). We were also asked to address prior jurisdiction in *Matter of City of Horn Lake*, 630 So.2d 10 (Miss. 1993). However, in that case we found:

Southaven also argues that this state consistently follows the "prior jurisdiction" rule on questions of municipal boundaries. They contend that if the chancellor had followed the principles of prior jurisdiction, then he would not have consolidated the trials again on the passage of Horn Lake's new ordinance. They cite *Incorporation of [Forest] Hill v. Fields*, 280 So.2d 837 (Miss.1973), for support.

In *Fields*, residents of an area called "[Forest] Hill" fought the City of Jackson over the incorporation of a twelve mile area abutting the western boundary of Jackson. The trial court consolidated the annexation proceeding with an incorporation proceeding. During trial, the City of Jackson adopted an ordinance for extension of the boundary of Jackson

7

to the Madison County line. *Fields*, 280 So.2d at 838. This ordinance did not refer to the previous ordinance concerning extension into the '[Forest] Hill" area. The annexation proceeding by [Forest] Hill had previously been dismissed; thus, the later ordinance did not have an affect on the validity or invalidity of the previous argument.

The ordinance in this case was amended to correctly describe the boundary of the City of Horn Lake, and its purpose was not to extend the boundaries of Horn Lake into other territories which were not described in the original annexation ordinance of December 7, 1989. *Fields* is factually distinguishable from the dispute in this case.

630 So.2d at 16. There was no need to address prior jurisdiction in that case. After Horn Lake's annexation was found to be unreasonable, Southaven was permitted to annex the disputed territory.

¶13. Biloxi contends that D'Iberville's argument is flawed for three reasons. First, Biloxi contends that the argument fails because D'Iberville has failed to show that it would have been granted the entire PAA had D'Iberville's petition been considered first. Second, Biloxi argues that the argument is waived because D'Iberville failed to raise the issue before the trial court. Finally, Biloxi claims that because D'Iberville consented to the consolidation order, that D'Iberville is estopped from making that assertion now. Biloxi is correct that D'Iberville is procedurally barred from raising this issue on appeal because the issue was not raised before the trial court. Notwithstanding this procedural bar, because this issue is being raised in annexation litigation around this State, we take this opportunity to address this issue as a guide to the bench and bar.

¶14. Biloxi is correct in asserting that there has been no showing that the result would have been different if the D'Iberville petition had been first considered alone. The chancellor analyzed each indicium in great detail in the twenty-six page Findings of Fact and Conclusions of Law. Furthermore, the consideration of the testimony of the inclusion petitioners and the testimony of Biloxi's witnesses was relevant to the reasonableness of D'Iberville's petition. As the chancellor stated on page 23 of the Findings of Fact and Conclusions of Law: "There is no real guidance as to factors to be taken into account when two cities

8

compete for the same land." However, these competing interests in the land should be considered in the twelve indicia and under the totality of the circumstances.

¶15. As to the question of whether the issue is waived by failure to raise it at the trial court level, D'Iberville maintains that this is an issue of jurisdiction which may be raised for the first time on appeal. D'Iberville relies on *Norwood v. Extension of Boundaries of City of Itta Bena*, 788 So.2d 747, 751-52 (Miss. 2001). However, that case is distinguishable from the case sub judice. In *Norwood*, after finding that the city failed to meet the statutory requirements of the notice provision under Miss. Code Ann. § 21-1-15, we held that the concerned citizens could raise the question of jurisdiction for the first time on appeal. *Norwood*, 788 So.2d at 751-52. Here, the trial court clearly had jurisdiction over each of the three petitions, and all statutory notice provisions were met. Further, D'Iberville cites no authority that the issue of *prior* jurisdiction may be raised for the first time on appeal.

¶16. Finally, as to the estoppel argument, D'Iberville consented to the consolidation of the three cases for trial. Not only did D'Iberville consent to the consolidation, but the order of consolidation was prepared and submitted by one or more of D'Iberville's attorneys. D'Iberville further acknowledges that the trial court had the authority to consolidate the three underlying cases for purposes of judicial economy.

¶17. In addition to the arguments brought forth in the briefs, the parties agreed during oral argument that the doctrine of prior jurisdiction has become antiquated. We agree. When reviewing a petition for annexation, a chancellor weighs the twelve indicia. The competing interest of another city is considered under one or more of the indicia and, certainly, when looking at the totality of the circumstances.

¶18. Although this issue is procedurally barred, we address this issue today as a guidance to the bench and bar. Until this case, we have not been faced with a situation where a chancellor has found more than one annexation petition concerning the same plot of land to be reasonable. Under the present day

circumstances where there is competition among multiple municipalities for the same land, it is essential that a chancellor evaluate the competing interests of the other city or cities when considering the twelve indicia in the totality of the circumstances. Given this Court's concerns regarding judicial economy, it is certainly reasonable for a chancellor to consolidate competing petitions for one trial. This is particularly so given the considerable expense and time involved in each annexation case. Accordingly, we today declare as antiquated the prior jurisdiction doctrine as it relates to annexation litigation, and to the extent that any of our prior cases have recognized and applied this doctrine, these prior cases are to that limited extent overruled.

### III.    The Reasonableness of the Chancellor's Decision

¶19.    Because the chancellor correctly consolidated the underlying petitions for annexation of the same territory, we shall simultaneously address both D'Iberville's and Biloxi's interests in the area.   Initially, the chancellor determined that annexation of a portion of the PAA was not reasonable for either D'Iberville or Biloxi. As to the remainder, the chancellor awarded a portion to D'Iberville and a portion to Biloxi. The petition for inclusion to Biloxi was granted and that area is included in the award to Biloxi. As stated above, the following twelve indicia of reasonableness are not separate or independent tests but rather are helpful in viewing the totality of the circumstances. *City of Hattiesburg,* 840 So.2d at 82-83 (¶ 21).

¶20.    Both cities have appealed the chancellor's decision that it is not reasonable for either city to annex a certain portion of the PAA. The area denied to both cities is described as: "All that part of Sections 19, 30 and 31, T6S, R9W, lying East of the Biloxi corporate limits, and Sections 20, 21, 29, 32, and the North one-half of Section 28, T6S, R9W." Specifically, the chancellor found:

> that (1) neither Biloxi nor D'Iberville has a need to expand into this area; (2) the area cannot reasonably be found to be a path of growth of either City at this time; (3) there are not [sic] potential health hazards from sewage and waste disposals in this area which need

10

to be addressed by either City at this time; (4) that, although Biloxi has the financial ability to make the infrastructure improvements and furnish municipal services promised in this area, Biloxi has substantial undeveloped areas from the previous annexation that need to be addressed before Biloxi can reasonably undertake the necessary improvements in this area; (5) D'Iberville does not have the financial ability to make infrastructure improvements and furnish municipal services to the larger area within a reasonable period of time; (6) there is no need for zoning and overall planning in the area at the present time, and the zoning and overall planning provided by Harrison County adequately serves the needs of this area at the present time and within the reasonably foreseeable future; (7) there is no need for municipal type services in the areas in its present state of development, or in the near future; (8) the net effect of allowing the annexation of this largely undeveloped rural area at this time to either City, would be to block the potential paths of growth for the other City; and (9) the best interests of the landowners and residents of this area, and of the two competing cities, would be to allow the further establishment of growth patterns in the area prior to a determination of whether this area should be annexed to either City, and which City, if either, is allowed to annex the area herein excluded.

¶21.    The chancellor further found it reasonable for the following area to be included in Biloxi: "All that part of Section 6, T7S, R9W, lying East of the Biloxi corporate limits and North of the Tchoutacabouffa River and all that part of Section 5, T7S, R9W, lying North and West of the Tchoutacabouffa River; and all that part of Section 4, T7S, R9W, lying West of the Tchoutacabouffa River" (referred to as the "BAA"). It also found it reasonable for the following area to be annexed by D'Iberville: "All that part of Section 7, T7S, R9W, lying North and East of the Biloxi corporate limits; and all that part of Section 6, T7S, R9W, lying South of the Tchoutacabouffa River; and all that part of Section 5, T7S, R9W, north of D'Iberville corporate limits and east of the Tchoutacabouffa River; and Section 33, and the S ½ of Section 28, in T6S, R9W" (referred to as the "DAA").

    A.    *The municipalities' need for expansion*

¶22.    The  chancellor utilized a number of factors to determine whether either  municipality had a need to expand into the PAA.

> This Court has enumerated many factors to consider when determining whether a City seeking an extension and enlargement has a reasonable need for expansion. These factors

11

may or may not include: (1) spillover development into the proposed annexation area; (2) the City's internal growth; (3) the City's population growth; (4) the City's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the City's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity. *In re Enlargement and Extension of Mun. Boundaries of City of Biloxi*, 744 So.2d at 279; *Matter of Enlargement and Extension of the Mun. Boundaries of the City of Jackson*, 691 So.2d 978, 980 (Miss.1997); *Extension of Boundaries of City of Ridgeland v. City of Ridgeland*, 651 So.2d 548, 552 (Miss.1995); *Matter of Extension of Boundaries of City of Columbus*, 644 So.2d 1168, 1173 (Miss.1994).

*In re Enlargement & Extension of Boundaries of City of Macon*, 854 So.2d 1029, 1035 (¶ 12) (Miss. 2003) (*City of Macon*). As stated, this list is not exhaustive nor is it required that each factor be present in order for an annexation to be reasonable. The chancellor's decision utilized many of the above-enumerated factors, and the decision is well supported by the evidence as presented at trial.

¶23. D'Iberville has demonstrated its need for expansion in various ways. The existing City is approximately 4.7 square miles. Development has spilled over into the DAA, including established subdivision development and ongoing new development. The total area of vacant land represents 19.5% of the total area of the city. The number of housing units has increased by 627 between 1990 and 2000. D'Iberville's population has increased to 1,619 persons per square mile. D'Iberville has been able to extend sewer service into the DAA, at great cost to the city. Because D'Iberville receives no direct income from the gaming industry, additional land is necessary to accommodate residential and commercial growth. However, the chancellor determined that this need is satisfied by the area of the DAA and not the entire PAA.

¶24. Biloxi also has shown a need to enlarge its borders. The chancellor found that Biloxi's ability to expand is limited due to its location. The Mississippi Sound is directly south, the City of Gulfport is directly

west, D'Iberville directly east, and DeSoto National Forest to its north. Biloxi has grown extensively since gaming emerged in 1993, as has the entire Harrison County. Biloxi has experienced commercial growth, including several national chain restaurants and two casinos (bringing the total casinos to nine). In nine months during 2000, Biloxi issued 333 building permits. From 1996 to 2000, business licenses issued increased from 140 to 2,570; water connections increased by 3,700, and sewer connections increased by 805. Biloxi has issued 117 building permits, 90 electrical permits, 58 plumbing permits, 28 mechanical permits and 18 certificates of occupancy in the previously annexed areas. The chancellor found that the BAA was sufficient to meet the needs of Biloxi and that there was no demonstrated need to expand beyond that area.

¶25. The chancellor's decision is well supported by the evidence and testimony presented at trial. This indicium supports a finding of reasonableness for annexation by each city, as reduced in area by the chancellor.

> B. *Whether the area sought to be annexed is reasonably within a path of growth of either city*

¶26. The trial court found that the DAA is clearly a path of growth for D'Iberville and that Biloxi is growing toward the BAA. The trial court further found that it would be premature to award the remainder of the PAA to either city at this time because it is largely undeveloped. In evaluating a path of growth in annexation cases, we have said:

> This Court has established factors for consideration when evaluating reasonableness as it relates to the path of growth which may or may not include: (1) spillover development in annexation area; (2) annexation area immediately adjacent to City; (3) limited are [sic] available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development. ***In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi***, 744 So.2d at 280; ***Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison***, 650 So.2d 490, 497 (Miss.1995); ***Extension***

13

> *of Boundaries of City of Ridgeland*, 651 So.2d at 556. This Court in *Enlargement and Extension of Mun. Boundaries of City of Meridian v. City of Meridian*, 662 So.2d 597, 612-13 (Miss.1995), held that the most important factors when determining the reasonableness of path of growth are the adjacency of the proposed annexation area to the City, accessibility of the proposed annexation area by City streets, and spillover of urban development into the proposed annexation area.

*City of Macon*, 854 So.2d at 1037 (¶ 25). Again, this is not an exclusive list of necessary factors, but rather is provided as a guide to evaluating the question of whether the area sought to be annexed is reasonably within a path of growth for a city.

¶27. Both D'Iberville and Biloxi are limited in the direction in which they may expand. D'Iberville is blocked by Biloxi to the west and the Mississippi Sound to the south. Jackson County lies to the east where an incorporation petition is pending for a new city. Biloxi is blocked to the east by D'Iberville, to the west by Gulfport, to the south by the Gulf of Mexico, and, with the exception of a small cushion of land, to the north by DeSoto National Forest.

¶28. The chancellor found that the DAA, the area to the north and west of D'Iberville, is clearly in the paths of growth for D'Iberville. Development is already occurring, and there is spillover into the DAA with the development of new subdivisions and businesses. The new subdivision development has been expedited due to the water and/or sewer service provided by D'Iberville. Transportation corridors provide direct access the DAA to D'Iberville, while there are no existing in use streets providing direct access to Biloxi.

¶29. The chancellor also found that Biloxi is growing toward the BAA. These residents have access to I-10 and several connecting streets into Biloxi. There is considerable development along Highway 15 near both cities' corporate limits. Due, for the most part, to the growth in gaming in Biloxi, the population of the entire PAA has increased by 55% over the last ten years.

¶30. Again, the chancellor found that the DAA was sufficient to meet the needs of D'Iberville, that the BAA was sufficient to meet the needs of Biloxi, and that neither city has demonstrated a need to expand beyond those areas. The chancellor's decision is based upon personal observation as well as supported by the evidence presented at trial. This indicium supports a finding of reasonableness for annexation by each city, as reduced in area by the chancellor.

> C. *The potential health hazards from sewage and waste disposal in the annexed area*

¶31. Noting that Harrison County and the objectors disagreed with the cities' position that there are potential health hazards that need to be addressed, the chancellor found that annexation of the DAA and BAA will address these problems. Although the chancellor cited no law in this section of the Findings of Fact and Conclusions of Law, this Court has:

> established a number of factors to be considered when evaluating the reasonableness as related to potential health hazards which may or may not include: (1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage. *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 744 So.2d at 280; *In re Extension of Corporate Boundaries of the Town of Mantachie*, 685 So.2d 724, 727 (Miss.1996); *Extension of the Boundaries of City of Ridgeland*, 651 So.2d at 558; *City of Horn Lake*, 630 So.2d at 18; *In re Matter of the Extension of the Boundaries of the City of Jackson*, 551 So.2d at 866; City of Greenville, 513 So.2d at 935.

*City of Macon*, 854 So.2d at 1038 (¶ 33). As with the previous two indicia, the list of factors is merely a guide and is not an exhaustive or exclusive list for determination of whether there are potential health hazards within a proposed annexation area.

¶32. Jim Weston of the Mississippi Department of Health confirmed that potential health hazards exist in the PAA. Despite the fact the soils are largely unsuitable for septic tank use, much of the area is served

by septic tanks. The only sewer service provided in the PAA is that provided by D'Iberville. Biloxi provides none. Both cities have adequate plans to address the need for proper sewage disposal.

¶33.    While the problems were well documented in the DAA and BAA, these potential hazards were not significant in the reduced area. That area is mostly rural and does not present the potential health hazards as the more populated areas of the DAA and BAA. Thus, after the reduction of the rural areas, the chancellor's findings that this indicium favors annexation is supported by the evidence presented at trial. The question would then be which municipality could provide these services.

>    D.    *The municipalities' financial ability to make the improvements and furnish municipal services promised*

¶34.    The chancellor found that both cities have the financial ability to successfully complete the proposed annexation, as reduced. In so determining:

> This Court has developed several factors to evaluate reasonableness as related to financial ability which may or may not include: (1) present financial condition of the municipality; (2) sales tax revenue history; (3) recent equipment purchases; (4) the financial plan and department reports proposed for implementing and fiscally carrying out the annexation; (5) fund balances; (6) the City's bonding capacity; and (7) expected amount of revenue to be received from taxes in the annexed area. *Town of Mantachie*, 685 So.2d at 728; *City of Meridian*, 662 So.2d at 611; *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 558; *City of Columbus*, 644 So.2d at 1171; City of *Greenville v. Farmers, Inc.*, 513 So.2d at 935; *In re Extension of Boundaries of City of Ridgeland*, 388 So.2d 152, 156 (Miss.1980); *In re Extension and Enlargement of the Mun. Boundaries of the City of Biloxi*, 361 So.2d at 1374; *Bridges v. City of Biloxi*, 253 Miss. 812, 178 So.2d 683, 685 (1965); *In re City of Gulfport*, 253 Miss. 738, 179 So.2d 3, 6 (1965).

*City of Macon*, 854 So.2d at 1039-40 (¶ 40). As with the other indicia, this list is not exclusive or exhaustive but rather is provided as guidance in determining the financial ability of the municipality to provide the improvements and services promised.

¶35. Both cities are in good financial condition and have the ability to keep their commitments, particularly with the reduction in the area annexed. D'Iberville's sales tax revenue has increased from $1,253,234 in 1996 to $2,389,868 in 2000. D'Iberville has very little outstanding bonded debt subject to the 15% limitation and had a general obligation capacity of $7,660,326 for the fiscal year of 2002.

¶36. Both D'Iberville and Harrison County stipulated that Biloxi's proposed annexation was reasonable from a financial ability standpoint. Biloxi has a bonding capacity of approximately $40 million and a total budget of approximately $100 million. Biloxi's general fund has approximately $18 million cash on hand, and Biloxi has approximately $62 million unencumbered cash overall. Biloxi has a fund balance of $6 to $7 million in water and sewer plans; is undertaking capital projects costing approximately $60 million; and has reduced its general fund millage to 15 mills.

¶37. Thus, the chancellor's finding that annexation of the DAA by D'Iberville and the annexation of the BAA by Biloxi is reasonable from a financial standpoint for both cities.

*E.    The need for zoning and overall planning in the area*

¶38. The chancellor found that this indicium does not have any significant impact on either annexation. Biloxi argues that this indicium should favor Biloxi over D'Iberville because Biloxi's planning department is better staffed and funded. This argument fails to take into account that the area is already covered under Harrison County's zoning ordinance for the entire PAA. Therefore, we find reasonable the chancellor's decision that this indicium is neutral relative to both cities' proposed annexation.

*F.    The need for municipal services in the area sought to be annexed*

¶39. The chancellor found that there is a need for the establishment of municipal services that favor a finding of reasonableness of annexation by both cities, but not for the entire PAA. Some factors to consider under this indicium include:

> (1) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density. *Enlargement and Extension of the Mun. Boundaries of City of Madison*, 650 So.2d 490, 502 (Miss.1995); *Extension of Boundaries of City of Ridgeland*, 651 So.2d at 559; *City of Horn Lake*, 630 So.2d 10, 21 (Miss.1993).
>
> This Court has also addressed how these factors are applied when addressing sparsely populated areas and densely populated areas. This Court found that in sparsely populated areas, there is less of a need for immediate municipal services. *In re Matter of the Extension of the Boundaries of the City of Jackson*, 551 So.2d at 867.

*City of Macon*, 854 So.2d at 1041-42 (¶¶ 51-52). Again, not all of the above-listed factors need be present or satisfied for an annexation to be deemed reasonable.

¶40. While there has been substantial population growth in the PAA, the majority of that growth has been immediately adjacent to the city limits of D'Iberville and Biloxi. The area reduced from the PAA consists largely of undeveloped area; and therefore, the trends do not apply to the reduced area. From 1990 to 2000, the entire PAA has grown in dwelling units from 328 to 533 and in population density from 88 persons per square mile to 136 persons per square mile.

¶41. Most of the PAA has been assigned a fire rating of Class 10 (the worst possible rating) by the Mississippi Rating Bureau while D'Iberville is rated Class 7 and Biloxi is rated Class 5. Upon annexation, the rating of each area will be changed to that of the city to which it belongs. Thus, annexation will result in a decrease of fire insurance rates for residents in the respective annexation areas.

¶42. The D'Iberville Fire Department has made numerous runs into the PAA. D'Iberville provides police protection at a municipal level through an interlocal agreement with the Harrison County Sheriff Department; however, D'Iberville is in the process of establishing its own police department. Biloxi already has its own police department. Although the chancellor found that the level of service currently provided

by the Harrison County Sheriff's Department in the PAA is adequate, additional municipal level law enforcement will benefit the area as it develops further. Sewer utilities are needed in certain areas of the BAA. Biloxi is capable of delivering water and sewer to the BAA. D'Iberville already provides water and sewer to certain portions of the PAA, particularly residences and businesses within the DAA.

¶43. Biloxi provides numerous recreational and cultural opportunities for the area. Biloxi has the area's only natatorium, conducts various festivals and maintains numerous parks and museums. Recreational opportunities for D'Iberville are currently being provided by interlocal agreement with Harrison County.

¶44. There is no dispute between the parties that there is a need for municipal services in the PAA now and in the future. This indicium favors a finding that annexation is reasonable. Again, the question becomes which city could provide these services. That Biloxi is bigger and has a larger budget does not mean that the services D'Iberville could provide are insufficient. Based upon the evidence presented at trial, the chancellor's weighing of the competing interests, and personal observation of the area, the chancellor's findings are reasonable and supported by the evidence.

> G. *Whether there are natural barriers between either city and the proposed annexation area*

¶45. The chancellor found that "[t]he existence of barriers, man-made, natural or geopolitical does not indicate the unreasonableness of the proposed annexation by either City." This Court has previously considered natural or man-made conditions that may impede a city's expansion or render the provision of services impossible or prohibitively expensive, including flood plains, *Columbus*, 644 So.2d at 1174-75, *Extension of Boundaries of Horn Lake v. Renfro*, 365 So.2d 623, 625 (Miss. 1978); interstate highway, *Southaven*, 630 So.2d at 23, *City of Hattiesburg*, 588 So.2d 814 (Miss. 1991); and county lines, *City of Hattiesburg*, 588 So.2d 814, *Jackson*, 551 So.2d at 865-66.

¶46.	In today's case, the only natural barrier in either the DAA or BAA is the Tchoutacabouffa River. However, since the river has already been bridged for traffic purposes, the river is not a factor. Thus, the chancellor's finding that this indicium is neutral is reasonable and supported by the evidence.

>    H.	*The past performance and time element involved in either cities'*
>    *provision of services to its present residents*

¶47.	This indicium is difficult to assess in the instant case. D'Iberville has no past annexation to evaluate, and Biloxi's past performance is difficult to measure due to the recent date of the 1999 annexation. With that difficulty in mind, the chancellor found that both cities have performed sufficiently in the past to satisfy this indicium.

¶48.	Although D'Iberville has never before annexed territory, the city was incorporated in 1988. The services provided to D'Iberville's current residents provide proof of its abilities. Water and sewer is available to all residences and businesses, although five residential structures are not connected to sewer and 24 residential structures are not connected to water. Either directly or through interlocal agreements, D'Iberville provides at a municipal level fire protection, police protection, trash and garbage collection, street lighting, parks and recreational facilities, streets, drainage, right-of-way maintenance, and animal control. D'Iberville has a comprehensive plan and zoning ordinance and has adopted standard building and construction codes.

¶49.	The services that Biloxi has undertaken to provide through its previous annexation are currently on schedule. Water and sewer is being provided in the previously annexed areas on an "as needed" basis. Biloxi owns the French Utilities, Cedar Lake Utilities, and Smith Utilities. The expected purchase of the certificated areas of the Galion Utilities will better serve the Woolmarket area. Biloxi is also seeking to build a fire station with land for a recreational facility in the Woolmarket area. They have also entered into

an agreement with the Harrison County School District for the use of a gym for recreational activities in other recently annexed areas of the city.

¶50. The Biloxi Public Works Department has met or exceeded its $1,159,000 projected annexation area cost for the first year and is expected to do the same for the second year. The Community Development Department is updating its mapping, zoning, and land development ordinance and has committed $300,000 to do so. The Comprehensive Plan is being updated. ¶51. Thus, the evidence supports the chancellor's finding that this indicium favors a finding of reasonableness for each city's annexation, as reduced.

*I. The impact (economic or otherwise) of the annexation upon those who live in or own property in the area proposed for annexation*

¶52. The chancellor found that this indicium evaluating the impact of an annexation on the residents and property owners supported the reasonableness of these annexations, as reduced. Under this indicium, the chancellor must "balance the equities by comparing the City's need to expand and any benefits accruing to residents from the annexation with any adverse impact, economic or otherwise, which will probably be experienced by those who live in and own property in the annexation area." *In re City of Horn Lake,* 630 So.2d 10, 23-24 (Miss. 1993) (citing *In re Ext. of Boundaries of City of Jackson*, 551 So.2d 861, 867-68 (Miss. 1989)). "The mere fact that residents and landowners will have to start paying city property taxes is not sufficient to show unreasonableness." *Columbus*, 644 So.2d at 1179 (citing *Jackson*, 551 So.2d at 867-68).

¶53. In the chancellor's view, the residents and property owners of the DAA and BAA will receive valuable services in return for the additional taxes. These services include police protection, fire protection, public works, and improved street and drainage maintenance, paving of streets, street lighting,

21

administration of municipal level code enforcement, and municipal level planning and zoning. Also, water and sewer needs will be extended where necessary and economically feasible. The comparative financial impact is relatively low in that D'Iberville's tax levy is 28.63 mills and Biloxi's tax levy is 30.10 mills. Additionally, the testimony of the Wells Ferry Landing residents (the inclusion petitioners) favored annexation of this area into Biloxi. Thus, the evidence supports the chancellor's finding that this indicium favors annexation by each city, as reduced.

  *J. The impact of the annexation upon the voting strength of protected minority groups*

¶54. The parties agreed at trial that there would be no impact on the voting strength of protected minorities. Thus, the chancellor correctly found that this indicium is neutral.

  *K. Whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy the (economic and social) benefits of proximity to the municipality without paying their fair share of taxes*

¶55. The chancellor found that this indicium was neutral. While residents of the PAA do receive some benefit by their proximity to the respective cities, it is "no more or less than any other citizen might receive as a result of living in close proximity to a City." The chancellor further reasoned that this factor is balanced by the fact that these outside residents shop at businesses inside the city, thereby increasing the sales tax rebate. Thus, we find reasonable the chancellor's finding that this factor is neutral.

  *L. Any other factors that may suggest reasonableness, vel non*

¶56. In this indicium, the chancellor noted that there has been little or no guidance provided to a trial court when there is more than one city competing for the same land. In this particular situation, all parties agreed to consolidate the matter for trial. Both cities have shown the need to expand in the sought area,

that the reduced areas are paths of growth for each, and that both cities have a common interest in establishing certain indicia, such as need for municipal services, planning and zoning, and the existence of potential health hazards. No natural barriers or impact on minority voting strength prohibit either city from annexation. Annexation would not have a substantial impact on the unincorporated residents, who currently benefit from the close proximity of both cities. Both cities have the financial ability to successfully complete the improvements of the annexation, as reduced.

¶57.    However, to permit annexation of the entire area by either municipality would effectively block any future annexation efforts of the other. Because the remaining area is undeveloped, the chancellor's decision to deny annexation of this area to both cities is well supported by the evidence and is reasonable. The chancellor's decision to grant the inclusion petition is reasonable for the reasons described above favoring annexation of the BAA by Biloxi.

## CONCLUSION

¶58.    Today we declare as antiquated the prior jurisdiction doctrine as it relates to municipal annexation litigation in Mississippi, and to the extent that any of our prior cases have recognized and applied this doctrine, these prior cases are to that limited extent overruled. Certainly our learned chancellors, for the sake of judicial economy and in fairness to annexation litigants, can consolidate multiple annexation cases involving common tracts of disputed territory.

¶59.    Based upon the foregoing, this Court affirms the chancellor's judgment granting in part and denying in part the annexation petitions of both D'Iberville and Biloxi and granting the inclusion petition of the Wells Ferry Landing citizens.

¶60.    **AFFIRMED ON DIRECT APPEAL AND ON CROSS-APPEAL.**

23

**SMITH AND WALLER, P.JJ., COBB, GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. PITTMAN, C.J., AND DIAZ, J., NOT PARTICIPATING.**