# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-AN-01611-SCT

*IN THE MATTER OF THE ENLARGEMENT AND
EXTENSION OF THE MUNICIPAL
BOUNDARIES OF THE TOWN OF TERRY,
MISSISSIPPI: GREG WILSON, DAVID
McGUFFEE, JOYCE WALLACE, KEVIN BRYANT
AND ARTHUR HARVEY*

*v.*

*TOWN OF TERRY, MISSISSIPPI*

DATE OF JUDGMENT:            10/22/2015
TRIAL JUDGE:                 HON. J. DEWAYNE THOMAS
COURT FROM WHICH APPEALED:   HINDS COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANTS:    JOHN PRESTON SCANLON
                             JERRY L. MILLS
ATTORNEY FOR APPELLEE:       RAJITA IYER MOSS
NATURE OF THE CASE:          CIVIL - MUNICIPAL BOUNDARIES &
                             ANNEXATION
DISPOSITION:                 AFFIRMED - 04/06/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE RANDOLPH, P.J., KING AND BEAM, JJ.**

**RANDOLPH, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    The Town of Terry sought to annex five territories adjacent to the existing Town—Territory 1 to the north, Territory 2 to the west, Territory 3 to the east, Territory 4 to the northeast, and Territory 5 to the south. The Chancery Court of Hinds County determined such an extensive annexation was unreasonable. However, the chancellor partially granted the Town's annexation request, finding their request for Territories 2 and 3 was reasonable. Some of the objectors appealed. Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2.     In May 2012, the Town of Terry passed an annexation ordinance seeking to enlarge its corporate boundaries by adding five tracts of land outside the Town in unincorporated Hinds County. As a result, the Town filed a petition with the Hinds County Chancery Court seeking approval, ratification, and confirmation of the proposed annexation. The Town served the cities of Byram and Florence with process and published notice in *The Clarion-Ledger*.

¶3.     Neither city filed objections or answers to the Town's petition. Five objectors—Greg Wilson, David McGuffee, Joyce Wallace, Kevin Bryant, and Arthur Harvey[1]—answered and objected to the petition through joint counsel. Following a trial, the chancellor granted the Town's petition in part. The chancellor found the annexation of Territories 1, 4, and 5 to be unreasonable due to the Town's inability to bear the financial burden of such a large-scale annexation, coupled with its lack of planning regarding the expansion of municipal services into all five proposed areas. However, following an analysis of the twelve indicia of reasonableness, the chancellor found a limited annexation of Territories 2 and 3 was reasonable. The Objectors appealed.[2]

**ISSUE**

---

[1]We refer to these five individuals collectively as "the Objectors." However, only two of the Objectors—Wallace and Wilson—live in the territories awarded to the Town for annexation and subject to this appeal.

[2]The Town did not cross-appeal the chancellor's denial of Territories 1, 4, and 5.

¶4.    The sole issue on appeal is whether the chancellor's partial grant of the Town's annexation petition was reasonable and supported by substantial, credible evidence.

## ANALYSIS

¶5.    "The role of the judiciary in annexations is limited to one question: whether the annexation is reasonable."[3] *Enlargement and Extension of Mun. Boundaries of City of Madison v. City of Madison*, 650 So. 2d 490, 494 (Miss. 1995). This Court will not reverse a chancellor's finding of reasonableness unless that finding is manifestly wrong and/or not supported by substantial and credible evidence. *Extension of Boundaries of City of Tupelo v. City of Tupelo*, 94 So. 3d 256, 266 (Miss. 2012). To determine reasonableness, this Court has promulgated the following twelve indicia:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7) whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of the annexation upon the voting strength of protected minority groups, (11) whether the property owners and other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity

---

[3]Section 21-1-33 provides that, before approving an annexation, the chancellor must find from the evidence that it "is reasonable and is required by the public convenience and necessity." Miss. Code Ann. § 21-1-33 (Rev. 2015). Given that the Court must consider reasonableness in light of the concerns of both the municipality and the landowners, "a determination of reasonableness necessarily encompasses an analysis of the public necessity and convenience of an annexation." *City of D'Iberville v. City of Biloxi*, 109 So. 2d 529, 537 n.1 (Miss. 2013).

to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*Id.* at 266-67. Rather than being separate, independent tests, these indicia must be considered collectively to determine whether, under the totality of the circumstances, annexation was reasonable. *Id.* at 266.

¶6.     According to the 2000 census, the Town had a population of 664. By 2010, the census reported the Town's population as 1,063. During the trial in 2014, the mayor approximated the population at 1,200. As noted by the chancellor, the Town's then-mayor, Roderick Nicholson, testified to spillover development in both the proposed annexation areas as well as within the Town. Two subdivisions of acreage properties had been developed in Territory 2 and low-density residential properties had developed in Territory 3. Both territories contained access points to Interstate 55, which intersects the Town. In the years preceding this annexation, a Chevrolet dealership had relocated from Crystal Springs to Terry and another merchant had established a "super store" in the Town. A new hardware store was also expected to open in March, the month after trial. Within the Town, two subdivisions had been developed. The Town had built a new city hall and had refurbished the old city hall into a combined public-works building and two-bay fire station.

¶7.     In addition to two sewer projects, the Town had completed a comprehensive water improvement project, which included a new well and a refurbished water tower. This project resulted in a decrease in the number of Town residents using personal wells from approximately twenty-five percent to one percent. The Town currently furnishes Territory

4

2 with municipal water and Territory 3 with municipal sewer. Municipal sewer services were extended into Territory 3 to ameliorate hazards posed by failing septic tanks in the area. Raw sewage was spilling into backyards and down road ditches. The Board of Health assisted the Town in acquiring funding for the sewer project in Territory 3. The mayor also testified of instances in which homeowners with septic tanks were extending their runoff pipes directly into a creek rather than onto their property where sewage could be filtered naturally before entering the groundwater. This influx of raw sewage directly into the water supply created both environmental and health concerns for the Town and surrounding areas. If annexed, the Town proposes to extend municipal sewer services to Territory 2. Annexation would also provide the proposed annexation areas (PAAs) with twice-weekly garbage collection as opposed to the weekly service residents in those areas currently are receiving. Territories 2 and 3 are immediately adjacent to the current Town limits and are connected by in-use public roads and thoroughfares.

¶8. While the mayor testified the Town had vacant land available for development, he was unable to tell the court how much vacant land was available, suggesting that the question would be better directed to William Peacock. Peacock testified for the Town as an expert in rural and urban planning and development, but he too was unable to quantify the vacant land available to the Town. While Peacock testified there was no unmet need for zoning the PAAs, he stressed the convenience that would result from residents being able to attend hearings in Terry rather than in Raymond. Both the mayor and Peacock testified that they knew of no zoning needs in the PAAs that were not being met currently by Hinds County.

However, the Hinds County zoning ordinances are considerably broad. The chancellor found that, as the PAAs are beginning to experience spillover development, the areas could benefit from the Town's more specific regulations. As the mayor put it, these ordinances would help "keep the peace" with regard to the highest and best use of a parcel of property because "hodgepodge" development can have an adverse effect on property values.

¶9. The mayor testified that the Town's projected budget for fiscal year 2014 was $1,057,050 and that the Town has consistently stayed within budget. The Town's account balance as of February 2014 was $214,283.76. According to the mayor, the monthly account balance ranged from $175,000 to $300,000, which was adequate funding for the Town to operate. The Town's yearly revenue for 2012 (the most recent annual financial statement available at the time of trial) was $1,097,925. As of the date of trial, the Town had the following debts: USDA loan for the fire station/public works building at $1,900 per month; loan for water and sewer projects at $2,700 per month; bill for repairing water tank at $753 per month. The mayor testified that the Town has not defaulted on any of its long-term debt obligations during his tenure as mayor. In addition, the Town expects to receive increased sales tax revenue from the "super store" that opened at the end of September 2013.[4]

¶10. Robert Lunardini testified for the Town as an expert in civil engineering and discussed the projected expansion of municipal sewer services into the PAAs. The projected cost of providing services to Territory 2 was $1,845,000. The projected cost for Territory 3 was

---

[4]The mayor testified that the Town generally receives sales tax revenue two months after it is collected, so the Town had realized only a few months of revenue as of the date of trial.

$463,000. The price differential is due to the fact that municipal sewer services are already provided to much of Territory 3. Lunardini then discussed the avenues available to the Town to finance this undertaking. The Town's past two sewer projects as well as the water system expansion were partially paid for through a Community Development Block Grant, which provided fifty-fifty matching funds. The Town would again apply for such a grant to fund these projects. Additionally, the Town qualifies for United States Department of Agriculture Rural Development Grants which provide up to seventy-five percent funding, but which typically provide forty to fifty percent.[5] The Town also has access to cap loan funding, but it has not had to resort to cap loan funding in the past.

¶11.    Lunardini testified that the Town would probably have to increase its sewer rate by about $17.28 per customer to account for the proposed expansion of utilities. This increase would be within the average rate of services in the area and would likely be imposed on current customers regardless of the result of the annexation. According to Lunardini, most cities in the area either have increased or will soon increase their rates due to the City of Jackson's expansion of its own sewage treatment facility.[6]

¶12.    Territory 2 is approximately 640 acres, with an estimated population of 281; Territory 3 is approximately 570 acres, with an estimated population of 455. The Town's current waste

---

[5]The lower the income of the population, the more likely the Town is to qualify for these grants. The population in Territory 3 is low-to-moderate income.

[6] While the Town treats its own sewage, many cities have their sewage treated by Jackson's facilities, so Jackson passed the expense of expansion on to all of its customers.

water treatment facility is operating at roughly fifty percent capacity, so it can accommodate the additional populations of these two areas.

¶13.    The Town of Terry and the PAAs are served by a volunteer fire department. At trial, the Town had just completed a new, two-bay fire station and was in the process of acquiring equipment and a new fire truck to establish a municipal fire department. As a result of building the new fire station, the Town's fire insurance rating had improved from nine to eight. Because the station is centrally located, the improved insurance rating can be extended to a three-mile radius, which includes Territories 2 and 3.

¶14.    The Town currently has four full-time police officers and one part-time police officer. The Town and the Hinds County Sheriff's Department have a reciprocity agreement so that the Town often responds to calls outside the Town limits in the PAAs. The mayor also testified that the Town would consider hiring additional officers if needed and financially feasible.

¶15.    The chancellor found no evidence of natural barriers that would preclude the Town from providing services to the PAAs as outlined in the annexation ordinance.

¶16.    Regarding past performance, the Town's most recent annexation was in 2009. All Town residents benefitted from twice-weekly garbage collection. As of the date of trial, Lunardini testified that the Town had extended municipal sewer to ninety-eight percent of the Town's residents. The Town upgraded its water system and improved its fire insurance rating. Other than repaving the Town's main thoroughfare, the mayor testified that the Town had not improved any other roadways. He did, however, anticipate "a total reconstruction"

of Old Highway 51 in the summer of 2014. This project would be completed with approximately eighty percent state aid funding. The Town had not developed any new storm-drainage facilities but anticipated those improvements to be included in a future project. Nor had the Town installed any new curbs, gutters, streetlights, or sidewalks. The mayor pointed out that analysis with Town engineers and local energy providers indicated that those improvements were not necessary.

¶17. The learned chancellor considered all of the evidence presented and found that "the Town provided proof that its past performance, while not perfect, was competent." The chancellor found that, if annexed, Territories 2 and 3 would enjoy comprehensive planning, economic development, housing and community development, code enforcement, and zoning and subdivision regulations. Additionally, the areas would benefit from municipal-level police protection and twice-weekly garbage collection. The areas would continue to be served by the current volunteer fire department, while the Town moves forward with its plan to outfit its new fire station and to develop a municipal fire department. Finally, the Town would extend municipal sewer services to Territory 2 and would expand its existing municipal sewer service in Territory 3 as soon as possible and financially feasible. The chancellor also considered the fact that the Town has retained the Central Mississippi Planning and Development District to develop a comprehensive plan to expand its borders as favoring annexation.[7]

---

[7]A comprehensive plan was drafted, but the Town is awaiting the outcome of this annexation matter before adopting an updated plan to ensure that all areas within the Town are included in its updated comprehensive plan. As part of those efforts, the Town retained

¶18. Finally, the chancellor balanced the Town's annexation request against the Objectors' concerns. Objectors testified at trial that they had no desire to be annexed, stating they considered their current level of services to be adequate and stressing a desire to continue living a rural lifestyle. In a detailed judgment, considering all twelve indicia of reasonableness, the chancellor limited the Town's annexation to Territories 2 and 3 only, expressly finding annexation of Territories 1, 4, and 5 to be unreasonable due to the Town's inability to sustain such a massive annexation. We find the chancellor's decision was reasonable and supported by substantial, credible evidence.

## CONCLUSION

¶19. The chancery court's findings were based on substantial, credible evidence, were not manifestly wrong, and were well within the chancery court's discretion. We therefore affirm the decision of the Chancery Court of Hinds County.

¶20. **AFFIRMED.**

**WALLER, C.J., DICKINSON, P.J., KITCHENS, KING, COLEMAN, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**

---

a civil engineer, Lunardini, to evaluate the feasibility, cost, and manner of providing municipal services to the PAAs.