# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-AN-02160-SCT

## CONSOLIDATED WITH

## NO. 2002-AN-01805-SCT

*IN THE MATTER OF THE EXTENSION AND
ENLARGING OF THE BOUNDARIES OF THE
CITY OF LAUREL, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/19/2004 |
| TRIAL JUDGE: | HON. FRANKLIN C. MCKENZIE, JR. |
| COURT FROM WHICH APPEALED: | JONES COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | RICHARD O. BURSON |
| | LESLIE PETTIS BARRY |
| | NORMAN GENE HORTMAN, JR. |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 03/02/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

## FACTS AND STATEMENT OF THE CASE

¶1.     In this annexation case, a petition was jointly filed by the City of Laurel, Mississippi

("City"), and a private landowner, Randy Chesney ("Chesney"). Chesney subsequently sold

the property to Malcolm Carmichael ("Carmichael"). Carmichael was later substituted for Chesney and is a party to this appeal.

¶2.    Chesney, the prior owner of the convenience store/ gas station ("convenience store"), approached the City requesting that his business, located at 14 Lower Myrick Road, be annexed by the City. The City, recognizing the opportunity to increase its tax base, accommodated Chesney's request, and passed Ordinance 1402-2002, seeking to annex a portion of the right-of-way of State Highway 15[1], along with the convenience store. The joint petition was filed on July 11, 2002. The proposed area of annexation ("PAA") tract is adjacent and contiguous to the City. The convenience store subject to annexation is located approximately four-tenths of a mile from the existing municipal boundary.

¶3.    On October 17, 2002, a hearing was held before the Jones County Chancery Court. Without considering evidence of reasonableness, the Chancellor found the annexation could not proceed as a matter of law, refusing to allow "the City to use the right-of-way 'owned by the State of Mississippi' to make 'pockets of territory outside the city limits' contiguous." ***In the Matter of the Extension and Enlarging of the Boundaries of the City of Laurel, Miss.: Randy Chesney and the City of Laurel, Miss.,*** 863 So.2d 968, 969 (Miss. 2004). The City and Chesney appealed to this Court. In a well-reasoned opinion authored by Chief Justice Smith, this Court held the Chancery Court erred. "Whether this proposed annexation

---

[1]There was no objection to the proposed annexation by the Mississippi Department of Transportation.

2

is reasonable or not is the ultimate question. Thus, the real determinative issue squarely confronting us is whether the chancellor must conduct a full hearing allowing for evidence and testimony and utilizing the indicia of reasonableness factors to determine if the proposed annexation is to be allowed. We conclude that he must do so." *Id.* at 971. Accordingly, this Court reversed the Chancellor and remanded the case "with instructions to proceed on the merits with a full hearing to determine whether the proposed annexation is reasonable." *Id.* at 973 (citations omitted). Pursuant to the mandate of this Court, on January 15, 2004, the Chancellor conducted a full evidentiary hearing to determine whether or not the proposed annexation was reasonable, *vel non.*

¶4.     Three opponents to the proposed annexation appeared at the hearing, as was their right under Miss. Code Ann. § 21-1-31. In addition to stating their opposition, they answered questions posed by the petitioners and the court. The opponents were not represented by counsel at the hearing, nor have they filed a brief.

¶5.     The Chancellor heard testimony and received the evidence presented, before issuing his opinion. The opinion addressed the twelve indicia of reasonableness established by this Court in *In re Enlargement and Extension of the Mun. Boundaries of the City of Meridian,* 662 So.2d 597, 609 (Miss. 1995). The Chancellor found the proposed annexation was unreasonable. The City and Carmichael timely filed this appeal and present the following issues for this Court's consideration: (I) Whether the Chancery Court's ruling that the proposed annexation is unreasonable is manifestly wrong and not supported by substantial

3

or credible evidence; (II) Whether the Chancery Court mischaracterized the annexation at issue; and (III) Whether the Chancery Court's ruling that the proposed annexation is "not required by the public convenience and necessity" exceeded the court's authority.

## STANDARD OF REVIEW

¶6.     With increasing regularity, municipalities have sought to increase their area of control and their tax base.  Notwithstanding, a significant number of our state's citizens prefer a rural lifestyle, and abhor the constraints they believe a municipality will impose upon them, along with increased taxes. The Legislature has placed the ultimate decision into the hands of the Chancery Court for ratification, approval, and confirmation. *See* Miss. Code Ann. § 21-1-29. Chancellors throughout the state are required to pass judgment on these competing interests. In performing this burdensome task, the Chancellor is required to apply the correct law and weigh the evidence. Only when the lower court fails to consider the applicable law as established by statute and this Court, or when Chancellors abuse their discretion, should their decisions be overturned.

> [W]here the Chancellor was the trier of facts, his findings of fact on conflicting evidence cannot be disturbed by this Court on appeal unless we can say with reasonable certainty that these findings were manifestly wrong and against the overwhelming weight of the evidence. Even if this Court disagreed with the lower court on the finding of fact and might have arrived at a different conclusion, we are still bound by the chancellor's findings unless manifestly wrong....

***Richardson v. Riley,*** 355 So.2d 667, 668 (Miss. 1978).

¶7.     As an appellate court, we are prohibited from disturbing a Chancellor's findings of fact unless they are "manifestly wrong or clearly erroneous." **Martin v. Lowery,** 912 So.2d 461, 464 (Miss. 2005) (quoting **Bowers Window & Door Co. v. Dearman,** 549 So.2d 1309, 1312-13 (Miss. 1989)). It is our solemn duty to afford due deference to a Chancellor, who sits as the fact finder. The Chancellor's role as fact finder parallels that of a juror. Model Jury Instruction 1:35 states, "[a]s sole judges of the facts in this case, you determine what weight and what credibility will be assigned the testimony and supporting evidence of each witness in this case. You are required to use your good common sense and sound, honest judgment in considering and weighing the testimony of each witness." A Chancellor is afforded the favor of observing the demeanor of witnesses and he is called upon to exercise his discretion, as we similarly mandate jurors. It is the sole responsibility of jurors to consider and weigh the evidence presented. Jurors are "permitted to draw such reasonable inferences from the evidence as seem justified in light of your own experience." *See* Mississippi Model Jury Instructions 1:29; 1:3; 1:351:36; 1:37; 1:38 (West 2005). In Chancery Court, "the Chancellor is vested with the responsibility to hear the evidence, assess the credibility of the witnesses, and determine ultimately what weight and worth to afford any particular aspect of the proof." **Rainey v. Rainey,** 205 So.2d 514, 515 (Miss. 1967). In **Rainey,** this Court held, "[t]he credibility of the witnesses and the weight of their testimony, as well as the interpretation of evidence where it is capable of more than one reasonable interpretation, are primarily for the chancellor as the trier of facts." **Id. Rainey** further stated that if the issue is one of fact, the

5

Chancellor's decision will not be disturbed unless it is manifestly wrong. ***Id.*** As with any finder of fact, he is entitled to consider the interests witnesses may have in the outcome. Additionally, the Chancellor may consider the absence of proof required of the proponents of annexation to sustain their petition.

¶8. Parties seeking annexation have the burden of proving to the Chancellor the reasonableness of their cause. Failure to do so must necessarily defeat their endeavor. The role of this Court is not to superimpose our opinion over that of the Chancellor, because our interpretation of facts, disputed and/or agreed, or the lack of facts, might cause us to reach an entirely different conclusion. "Our standard of review is limited to a single question, whether the annexation is reasonable." ***Chesney and the City of Laurel, Miss.,*** 863 So.2d at 970 (citations omitted).

¶9. The issue before the trial judge was whether the annexation was reasonable, *vel non.* The issue before this Court is limited. Did the trial judge follow applicable law and was there credible evidence, or the lack thereof, to validate his judgment? In ***Chesney and City of Laurel,*** this Court held that when reviewing the decision of a Chancellor, "[r]eversal is warranted only when the Chancery Court has employed erroneous legal standards or this Court has a 'firm and definite conviction that a mistake has been made.'" ***Id.*** at 971 (quoting ***Bassett v. Town of Taylorsville,*** 542 So.2d 918, 921 (Miss. 1989). We must resist the temptation to substitute our judgment for that of a Chancellor, even though we may have found otherwise, had any one of us been the trial judge.

## ANALYSIS

**I. Whether the Chancery Court's ruling that the proposed annexation is unreasonable is manifestly wrong and not supported by substantial and credible evidence.**

¶10. Chancellor McKenzie's Findings of Fact, Conclusions of Law, and Final Judgment ("Opinion"), clearly demonstrate that he prudently considered and weighed the proof presented, and analyzed it in conjunction with the twelve factors required to determine the reasonableness *vel non* of the proposed annexation, as enumerated by this Court in *City of Meridian,* 662 So.2d at 609. The Chancellor concluded that the standard of reasonableness for annexation was not met. The Chancellor's determination is amply supported in the record and in his ten page opinion.

¶11. (1) **The Municipality's need to expand**: Testimony revealed this alleged need for expansion arose *only* after the Mayor was approached by Chesney, who "came and made an appointment in my office and said that he would like to voluntarily annex his property into the City of Laurel."

¶12. Other than conclusory statements by the City's elected officials and employees, no evidence was presented by the City that there was a need to expand in the proposed area of annexation ("PAA"), nor was any evidence presented that the alleged need arose prior to Chesney's request. No oral or documentary evidence was offered that from the date of Chesney's request until the date of the hearing, any analyses or studies had been undertaken or reports or surveys prepared to support the City's need to expand. The City acknowledged

there were no previous requests for annexation in this area and that no other property in that vicinity had been annexed by Laurel.

¶13.    *Poole v. City of Pearl,* 908 So.2d 728 (Miss. 2005) undergirds the Chancellor's opinion. Without "developing a litmus test," *Poole* sets forth numerous non-exclusive factors that should be considered by a chancellor in analyzing the need for expansion. *Id.* at 733-34. With the exception of testimony by the City that it needed to expand its tax base, there was no evidence presented by the City or Carmichael satisfying other *Poole* factors. No evidence was presented of: (1) spillover development into the PAA by Laurel; (2) Laurel's population and internal growth; (3) Laurel's need for developable land; (4) remaining vacant land within Laurel; (5) growth in the PAA that would require comprehensive planning; (6) Laurel's need to exercise control over the PAA to provide comprehensive planning and growth; (7) traffic counts; (8) limitations upon Laurel due to geography and surrounding cities; (9) any environmental influences; and, (10) increased building permit activity. In the absence of supporting evidence, we cannot say the Chancellor erred when he rejected the unsupported testimony of the petitioner's witnesses, all of which had an interest in the outcome.

¶14.    The pleadings and lack of proof support the Chancellor's opinion that the City has no need to expand into the PAA. The PAA is solely comprised of a highway right-of-way which crosses a creek and flood plain, directly to a preexisting convenience store. The convenience store is totally detached from the City, except for the highway right-of-way. Maps illustrating the PAA, which were attached as exhibits to the Petition, reveal that the store is surrounded

8

on all sides by county property, with the exception of the aforementioned highway right-of-way.

¶15.     Fact finders are not bound by conclusionary statements or opinions which are *not* supported by underlying facts, data, reports or surveys. The Chancellor found Carmichael and the City failed their burden to satisfy factor (1) of the reasonableness test, which does not favor annexation. We find, based upon the testimony and evidence, the petitioners failed to satisfy factor (1).

¶16.     (2) **Whether the area sought to be annexed is in the path of growth**: The Chancellor found that the proponents for annexation failed to satisfy factor (2). A witness for the City testified that the proposed annexed area was in a path of growth, because it is on Highway 15 South, a four-lane highway. In contrast, Carmichael, who owns the property, testified the property is located at 14 Lower Myrick Road, which according to another witness, is a two lane road. Ordinance 1402-2002 declared the property was located at 14 Lower Myrick Road.

¶17.     This Court, in *In the Matter of the Enlargement and Extension of the Municipal Boundaries of the City of D'Iberville v. The City of Biloxi,* 867 So.2d 241 (Miss. 2004)**,** held,

> This Court has established factors for consideration when evaluating reasonableness as it relates to the path of growth which may or may not include: (1) spillover development in the annexation area; (2) annexation area immediately adjacent to City; (3) limited area available for expansion; (4) interconnection by transportation corridors; (5) increased urban development in annexation area; (6) geography; and (7) subdivision development.

9

*Id*. at 253. The testimony presented failed to establish factors (1), (3), (5), (6) and (7).

¶18.    Although one witness opined that the PAA was in a path of growth, this opinion was offered without corroborating evidence. The City conceded that Laurel did not seek to annex Carmichael's property or anything in that area in a prior annexation effort by the City. *See City of Laurel v. Sharon Water Works Ass'n,* 2005 WL 1906031 (Miss. 2005). The Chancellor specifically considered the testimony, or lack thereof, and found the testimony was "doubtful."

¶19.    It was within the prerogative of the Chancellor to accept or reject the testimony of any witness, and consider all facts not in dispute, and make his decision accordingly. We find no error in the Chancellor's conclusion that the proponents failed to offer sufficient proof  this factor favored annexation.

¶20.    (3) **The potential health hazards from sewage and waste disposal in the annexed areas:** The Chancellor found, "[t]he evidence shows that there are no health hazards in the area which would be solved by annexation. The City approves the wastewater disposal of Carmichael by private septic system and does not intend to provide sewer services."  No testimony was presented that sewage and waste disposal would create any health hazards. We find no error in his finding.

¶21.    (4) **The municipality's financial ability to make improvements and furnish municipal services:** We find no error in the Chancellor's determination that the City was able to provide municipal services, a factor which supports annexation.

¶22.    (5) **The need for overall zoning and planning in the area:** A witness for the petitioners testified to the needs and benefits of zoning this area. When asked, "[w]hat benefits does zoning provide?" the witness related the general benefits of zoning, without specifically addressing the benefits to be provided to the PAA. The petitioner's witness further testified that the area would be zoned as General Commercial or C-2, which would allow its then present use. Regardless of whether zoning would be implemented, the property retained its present use, as there was no evidence presented of zoning restrictions in the county. The Chancellor concluded there is no benefit to the zoning of the PAA. This finding was supported by Carmichael, who testified that his building already met the City's standard building code and that "there is some negative" to being zoned. As the PAA consists of one business site and the highway right-of-way leading to it, the Chancellor did not err in finding there is no need for any overall planning in the area. This factor does not favor annexation.

¶23.    (6) **The need for municipal services in the area sought to be annexed:** The City would not be responsible for providing sewer or water services, as Carmichael did not seek them. Carmichael asserted that he sought annexation to receive more efficient police service and round-the-clock fire protection; a cheaper insurance rating; and to have access to garbage services and pest control. However, the Chancellor found otherwise. Testimony was also given that Carmichael was already serviced by a private garbage service, and if annexed, he might considering changing to the garbage service provided by the City. Based on the

testimony presented, the Chancellor found the request for municipal services was a pretext to legalize the sale of beer, in an area where such sales were prohibited.

¶24.  Evidence also revealed the City was not going to provide water and sewer to the PAA. The City would not install a fire hydrant in the PAA, but rather obtain water to fight fires by ferrying water across the bridge from a fire hydrant four tenths of a mile away.

¶25.  Evidence was also presented that Carmichael would not receive any benefit from the City's police department, that was not already provided by the Sheriff's department. Hubert Welch ("Welch"), a retired school administrator who lives one half of a mile from the convenience store, stated that deputy sheriffs' cars are at the store "quite frequently," as well as the Constable's vehicle. Carmichael also testified, "the Deputies do a good job." Welch testified that the area was adequately protected by three volunteer fire departments. No testimony was presented by the petitioners that there was inadequate police or fire protection in the area, but only generalized opinions that response time would be faster.

¶26.  The Chancellor found the area sought to be annexed would not benefit from the provision of police and fire protection by the City, as Carmichael was already adequately protected by volunteer fire departments and Sheriff's patrol. This factor does not favor annexation.

¶27.  This Court recognizes a conflict in fact exists regarding this factor, but as there is substantial and credible evidence to support the Chancellor's ruling, we are required to defer to the Chancellor. Accordingly, we find no error.

¶28.  (7) **Whether there are natural barriers between the City and the proposed annexed area:** The Tallahala Creek and its flood plain lie between the limits of the City and the area sought to be annexed. A witness for the petitioners testified that the creek was a natural barrier, "but...it has a very substantial bridge... so there are no natural barriers that would prohibit the City from annexing this property...." The chancellor stated, "a large portion of the highway right-of-way sought to be annexed by the City consists of a bridge spanning the creek and its flood plain." The record reflects a bridge spans the creek and flood plain for approximately four-tenths of a mile. The Chancellor found there is an established bridge that accommodates the highway right-of-way and bypasses the natural barrier. The Chancellor analyzed the interaction between this factor and factor (4).

¶29.  Chesney chose not to seek water or sewer services, although Ordinance 1402-2002 stated the City would provide the same municipal services to the PAA that were available to all its residents. The Chancellor recognized water or sewer services had not been requested by Carmichael; however, the Chancellor astutely observed that if this area were to be annexed, Carmichael or a subsequent owner may seek water or sewer services from the City. A consulting engineer hired by the City testified the City had not performed a cost analysis for providing water or sewer services to the area. The Chancellor opined that if an owner of this property were to request water and sewer services from the City, the costs of providing water and sewer across or under a creek would be "so high that it would not be economically feasible in order to serve one customer operating a convenience store." We cannot say the

13

Chancellor erred in opining that if a subsequent owner demanded water and sewer service from the City, it would not be economically feasible for the City to provide these services given the natural barriers between the City and the PAA. This factor does not favor annexation.

¶30. (8) **The past performance and time element involved in the City's provision of services to its present residents:** The Chancellor found that the City had done a good job of providing services to its residents in the past, a factor which favors annexation, and is a finding without error.

¶31. (9) **The impact (economic or otherwise) of the annexation upon those who live in the area:** The Chancellor found that only Carmichael and the State Highway Department were in the PAA.

¶32. The residents of the community who live near Carmichael's store testified that annexation would adversely affect their property. The evidence is clear that the only individual to benefit from the proposed annexation would be Carmichael. Carmichael testified he would benefit from annexation for the following reasons: (1) he could increase revenues by being allowed to sell beer from his convenience store, which would allow him to compete with a convenience store four-tenths of a mile away located in the City. Carmichael testified, "I'm in this to make money;" (2) he believed police and fire protection would be improved; (3) he would save money on insurance; and (4) he would have access to City pest control. The Chancellor found that Carmichael's request for annexation was

motivated by his desire to sell beer to increase his profits, and the request for municipal services was a mere pretext to accomplish this goal.

¶33.    No evidence was presented that annexation favorably impacts any other persons who live in the area, a factor against annexation. We conclude no error was committed by the Chancellor regarding factor (9).

¶34.    (10) **The impact of annexation upon the voting strength of protected minority groups:** There are no voters residing in the area sought to be annexed; therefore, this factor is neutral, and was so treated by the Chancellor.

¶35.    (11) **Whether the property owners and other inhabitants of the area sought to be annexed have in the past, and will in the future unless annexed, will because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes:** No proof regarding this factor was introduced. This factor is also neutral.

¶36.    (12) **Any other factors that may suggest reasonableness:** The Chancery Court found, "[t]his court is convinced that if Malcolm Carmichael now had the right to sell alcoholic beverages at his convenience store, this annexation case would not exist." The Chancellor opined, "[t]he annexation would make legal what is now illegal in the area."

¶37.    The Chancellor relied not only on the testimony of opponents regarding the sale of beer, but also recognized that the citizens of the area surrounding the PAA expressed their will through the ballot box, and voted to prohibit beer sales in the county, including the PAA.

15

Rarely is the will of our citizens determined by direct vote. However, here the citizens voted to keep beer out of the PAA, and this Court accords deference to their expression, and finds no fault in the Chancellor's consideration of same. It is not and should not be a conclusive test of reasonableness, but rather a factor in determining reasonableness by examining the totality of the circumstances.

¶38. The lower court also received evidence from Leroy Hamilton, a Public Accountant and a Jones County School System, District Four Board member, that the present line of demarcation between the City and County, the bridge that spans the Tallahala Creek and flood plain, would be lost. Hamilton testified he and other residents love the City, but have chosen to live in the County and do not want the City to cross the bridge into the County. Hamilton stated he and other residents did not want the City to cross over the bridge because, "they are afraid if you ever get there, you will continue." It is this concern that if the City established a beachhead by annexing a "string on a balloon," (*see infra),* the City may later seek to annex other parcels in the area where people have chosen to build and live outside of the City. Hamilton and other residents "are fearing the City more than the alcohol sales."

¶39. The lower court found annexation for the purpose of Carmichael increasing his profits by selling beer was unreasonable.

¶40. The Chancellor properly considered the twelve indicia of reasonableness. We are satisfied that the trial court applied the correct legal standard, and there exists a sufficient combination of (1) undisputed facts; (2) contested facts; and (3) the absence of documented

16

data, facts, analysis, or studies for the Chancellor to deny annexation. Concluding such, the Chancellor's judgment cannot be said to be manifestly wrong or clearly erroneous. Accordingly, we affirm.

**II.      Whether the Chancery Court mischaracterized the annexation at issue**

¶41.   The appellant charges the Chancery Court mischaracterized the annexation at issue by including in his opinion: "This case presents a joint request for annexation. One by the City of Laurel which seeks annexation of 4/10 of a mile of the right-of-way of Mississippi Highway 15 South of Laurel. And the other by property owner Malcolm Carmichael which seeks annexation of his property once the City's annexation is able to extend the City boundaries so it touches his property."

¶42.   There is no evidence the Chancery Court failed to follow this Court's mandate and treat the annexation as one tract. It is obvious that the ultimate decision of the Chancellor did not turn on the language quoted by the appellants, as it is clear the Chancellor considered the twelve reasonableness factors as required by the Court in ***Chesney,*** as addressed in our analysis of Issue I.

¶43.   Courts throughout this land have been troubled by the adjacency issue about which this Court made a clear pronouncement in ***Chesney***. Other courts refer to this type of annexation as "shoestring," "balloon on a stick," "corridor" or "long lasso" annexation, which rely solely on a highway right-of-way or a narrow corridor to connect the municipality to an otherwise noncontiguous area in order "to capture a prize parcel." ***Town of Baraboo***

17

*v. Village of West Baraboo,* 699 N.W.2d 610 (Wisc. App. 2005). *See also City of Rapid City v. Anderson,* 612 N.W.2d 289 (SD 2000); *Hughes v. Town of Oak Island,* 580 S.E.2d 704 (NC App. 2003).

¶44. This Court has wisely determined that no single factor should be used to defeat or sustain annexations; but has sufficiently developed a body of law for chancellors to follow to determine reasonableness *vel non*. Single issue concerns such as "balloon on a stick" or "corridor" annexations are subsumed into the overall broader analysis of the totality of the circumstances, and can be considered within the twelve factor framework.

¶45. Appellants ask this Court to parse the Chancellor's words, when the record is clear that the Chancellor did treat the PAA as one tract of land for annexation consideration. Appellants concede in their brief the purported error is "probably not reversible error." The Court agrees with the appellant and finds no reversible error as to Issue II.

**III. Whether the Chancery Court's ruling that the proposed annexation is "not required by the public convenience and necessity" exceeded the Court's authority.**

¶46. As the Chancellor considered the twelve reasonableness factors required by this Court in a clear and concise manner and justifiably determined the annexation to be unreasonable, it was harmless error for him to consider public convenience and necessity.

¶47. The language in the Chancellor's opinion regarding "public convenience and necessity" is, at worst, mere surplusage. The Chancellor made a clear analysis of the twelve reasonableness factors; therefore, his consideration of "public convenience and necessity"

18

is of no consequence in the ultimate determination of this case. In an otherwise exceptional opinion on the reasonableness *vel non* of the attempted annexation, the Chancellor properly considered the twelve reasonableness factors required by this Court. Therefore, Issue III is without merit.

## CONCLUSION

¶48.    It is the duty of this Court to defer to the Chancellor unless we are convinced his findings are manifestly wrong or clearly erroneous. In this case, the Chancellor properly considered all factors required for annexation cases, as previously enumerated by this Court. The determination by the Chancellor was neither manifestly wrong, nor clearly erroneous. Therefore, we affirm his decision.

¶49.    **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR.  GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  DIAZ, J., NOT PARTICIPATING.**

19