# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-AN-00749-SCT

*IN THE MATTER OF THE ENLARGING,*
*EXTENDING AND DEFINING THE CORPORATE*
*LIMITS AND BOUNDARIES OF THE CITY OF*
*OLIVE BRANCH, DESOTO COUNTY,*
*MISSISSIPPI: THE CITY OF OLIVE BRANCH,*
*MISSISSIPPI*

*v.*

*PEGGY DOBBINS ET AL.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/29/2024 |
| TRIAL JUDGE: | HON. PERCY L. LYNCHARD, JR. |
| TRIAL COURT ATTORNEYS: | BRYAN EDWARD DYE |
| | J. CHADWICK MASK |
| | JACOB THOMAS EVANS STUTZMAN |
| | CHARLES GREGORY DAVIS |
| | STEVEN W. PITTMAN |
| | ANTHONY E. NOWAK |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. CHADWICK MASK |
| | BRYAN EDWARD DYE |
| | JACOB THOMAS EVANS STUTZMAN |
| ATTORNEY FOR APPELLEES: | CHARLES GREGORY DAVIS |
| NATURE OF THE CASE: | CIVIL - MUNICIPAL BOUNDARIES & ANNEXATION |
| DISPOSITION: | AFFIRMED - 02/26/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1. This appeal arises from the DeSoto County Chancery Court's order denying the petition of the City of Olive Branch (the City) to annex two parcels of land identified as Tract 2 and Tract 3. After conducting a thorough analysis, the chancery court held that the

annexation was unreasonable.  Upon review of the record, we find that the chancery court's decision is supported by substantial credible evidence, and we affirm the chancery court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2.     The City incorporated in 1874.  Its boundaries were enlarged in 1990 to the Tennessee state line, in 1996 west to Malone Road and south to Church Road, and in 1998 and 2015 through smaller industrial annexations.  The City's largest expansion occurred in 2021, when 18.8 square miles were annexed following a petition filed in 2018.  Tracts 2 and 3 were included in the petition but were excluded from the final 2021 decree.

¶3.     On December 22, 2022, the City's Board of Aldermen adopted an annexation ordinance for Tracts 2 and 3.  The ordinance described the land, attached maps and plats, and listed proposed municipal services as required by Mississippi Code Section 21-1-27(1) (Supp. 2025).  The City filed its Complaint in the Nature of a Petition the same day.[1] Statutory requirements for notice and service were satisfied.

¶4.     Tract 2 consists of about eighty acres at the intersection of Pleasant Hill Road and Laughter Road owned by the Bridgforth family.  Their land was split between the City and unincorporated county territory after the 2021 decree.  Tract 3 encompasses land around the Laughter Road/Interstate-269 interchange.  The Bridgforth family owns the southern portion, and the Funderburk family owns the northern portion.  Both tracts are vacant and

---

[1] On or about June 7, 2023, the City filed a supplemental petition regarding Tract 1. The chancery court consolidated both petitions and ultimately approved the annexation of Tract 1.  Tract 1 is not at issue on appeal.

uninhabited.

¶5.    The trial occurred on February 12 and 13, 2024.  The City presented evidence and testimony from eight witnesses regarding Tract 2 and Tract 3, including the landowners. Two witnesses testified in opposition to the annexation.

*A.    Witness Testimony for the City*

¶6.    Barry Bridgforth testified that he is a real-estate developer and manages the property in Tract 2 on behalf of his family.  Bridgforth testified that he approached the City about annexation because he wanted the "full spectrum" of City services for any future development.  He acknowledged, however, that development was still in planning stages and that no specific projects were underway.  He further acknowledged that the City can provide water, gas, and sewer services without annexation.  Bridgforth also testified about Tract 3. Bridgforth testified that the property was originally intended for development as a Love's Truck Stop, but the project did not proceed due to zoning restrictions.  Specifically, the DeSoto County Board of Supervisors approved conditional zoning for the site but imposed restrictions that excluded filling stations with showers or sleeping accommodations, effectively prohibiting overnight truck stops.

¶7.    Laney Funderburk testified that his family requested annexation of Tract 3 north of Interstate 269.  He explained annexation was sought for future access to fire protection and utilities.  When asked about his intentions to develop the area, Funderburk responded, "I really have no idea. I've got no plans for that . . . at this time."

¶8.    Mayor Ken Adams testified that the annexation ordinance was adopted in response

3

to the landowners' petitions. He emphasized that the City had not engaged in rezoning discussions and that the request originated with the Bridgforth and Funderburk families.

¶9. Vince Malavasi, a licensed professional engineer, testified that the City remained on schedule to implement utility services promised in the 2021 decree. He explained that the City's existing infrastructure could support Tracts 2 and 3 without new facilities.

¶10. Ty Windham of the Mississippi State Rating Bureau testified about the City's fire protection. He noted the City held a Class 4 fire rating, which is superior to the tracts' Class 6 rating. Windham also testified that the fire department could serve the annexation areas with current stations and equipment.

¶11. Jason May, the City's chief financial officer, testified regarding the City's financial capacity. He described revenues, expenditures, and debt service, explaining the City was fulfilling 2021 annexation commitments and had resources to extend services. At the conclusion of his testimony, May stated that the City has the financial ability to provide municipal services and improvements in Tract 2 and Tract 3.

¶12. Police Chief William Cox testified regarding the police department's manpower and equipment. Officer Cox further testified that his department was capable of serving Tract 2 and Tract 3.

¶13. Michael Slaughter testified as an expert in the fields of urban and regional planning and civil engineering. He reviewed population data, traffic counts, and growth patterns, and opined that the annexation was reasonable when considering the totality of the circumstances. He acknowledged, however, that "the need for developable land is not a big issue" in this

4

case and that growth in the City had slowed since 2020.

### B. Witness Testimony for the Objectors

¶14. Siblings Peggy and Ernest Dobbins testified that they own land across from Tract 3. Peggy testified she had lived there for seventy-two years. She also testified that she was pleased with the services from the Bridgetown Fire Department and the DeSoto County Sheriff's Department. Peggy expressed her concern that annexation might lead to rezoning for a truck stop. Ernest similarly testified that he was concerned about potential rezoning because he did not want to live near a truck stop.

### C. The Chancery Court's Decision

¶15. The chancery court denied annexation on May 29, 2024. The court analyzed the twelve indicia of reasonableness and listed four specific reasons for finding the annexation unreasonable: (1) development plans were "unknown and speculative"; (2) annexation risked "jurisdictional confusion"; (3) the Bridgforth request may have been motivated by rezoning interests; and (4) Tracts 2 and 3 had been denied annexation in 2021. The court referenced its 2021 opinion, which had been stipulated into evidence as Exhibit 6. Portions of the 2024 opinion included statements applicable to 2021 annexation but not the 2024 annexation, such as references to inhabited areas and participation of other municipalities. On June 20, 2024, the City filed its Notice of Appeal.

## STANDARD OF REVIEW

¶16. This Court's review of annexation is limited to determining whether the annexation is reasonable. *City of Petal v. Gulf S. Pipeline Co., LP (In re City of Petal)*, 301 So. 3d 591,

5

598 (Miss. 2020). It may only reverse the chancery court's findings as to the reasonableness of an annexation if the chancellor's decision is manifestly wrong and/or not supported by substantial and credible evidence. *City of Jackson v. City of Madison (In re City of Madison)*, 650 So. 2d 490, 495 (Miss. 1995). Further, "[w]here there is conflicting, credible evidence, we defer to the findings below." *Bassett v. Town of Taylorsville*, 542 So. 2d 918, 921 (Miss. 1989) (citing *McElhaney v. City of Horn Lake (In re City of Horn Lake)*, 501 So. 2d 401, 403 (Miss. 1987); *In re City of Moss Point v. Sherman*, 492 So. 2d 289, 290 (Miss. 1986); *Liddell v. Jones*, 482 So. 2d 1131 (Miss. 1986); *Hans v. Hans*, 482 So. 2d 1117 (Miss. 1986)). "Findings of fact made in the context of conflicting, credible evidence may not be disturbed unless this Court can say that from all the evidence that such findings are manifestly wrong, given the weight of the evidence." *Id.* (citing *In re City of Horn Lake*, 501 So. 2d at 403; *Wise v. City of Biloxi (In re City of Biloxi)*, 361 So. 2d 1372, 1376 (Miss. 1978); *City of Picayune v. Quick & Grice, Inc.*, 238 Miss. 429, 117 So. 2d 718 (1960). "We only reverse where the [c]hancery [c]ourt has employed erroneous legal standards or where we are left with a firm and definite conviction that a mistake has been made." *Id.*

¶17. The City has the burden of proving the reasonableness of the annexation. *Lee v. City of Biloxi (In re City of Biloxi)*, 744 So. 2d 270, 277 (Miss. 1999). Reasonableness is determined by twelve factors:

> (1) the municipality's need to expand, (2) whether the area sought to be annexed is reasonably within a path of growth of the city, (3) potential health hazards from sewage and waste disposal in the annexed areas, (4) the municipality's financial ability to make the improvements and furnish municipal services promised, (5) need for zoning and overall planning in the area, (6) need for municipal services in the area sought to be annexed, (7)

6

whether there are natural barriers between the city and the proposed annexation area, (8) past performance and time element involved in the city's provision of services to its present residents, (9) economic or other impact of the annexation upon those who live in or own property in the proposed annexation area, (10) impact of annexation upon the voting strength of protected minority groups, (11) whether the property owners or other inhabitants of the areas sought to be annexed have in the past, and in the foreseeable future unless annexed will, because of their reasonable proximity to the corporate limits of the municipality, enjoy economic and social benefits of the municipality without paying their fair share of taxes, and (12) any other factors that may suggest reasonableness.

*City of Saltillo v. City of Tupelo (In re City of Tupelo)*, 94 So. 3d 256, 266-67 (Miss. 2012) (quoting *City of Horn Lake v. City of Southaven (In re City of Southaven)*, 5 So. 3d 375, 376-77 (Miss. 2009)). "These factors 'must be considered collectively to determine whether, under the totality of the circumstances, annexation was reasonable.'" *In re City of Petal*, 301 So. 3d at 599 (quoting *Wilson v. Town of Terry (In re Town of Terry)*, 227 So. 3d 917, 919 (Miss. 2017)).

**DISCUSSION**

¶18.    On appeal, the City contends the chancery court reached conclusions contrary to the overwhelming weight of the evidence, improperly applied res judicata principles, and improperly considered timing in relation to the 2021 annexation. The objectors respond that the court expressly disclaimed applying res judicata, acted within its authority in assessing reasonableness, and based its decision on substantial evidence under the twelve indicia. Each argument is addressed in turn below.

> **1.    Whether the chancery court erred by finding the annexation unreasonable.**

¶19.    After considering all the evidence presented, the chancellor must determine whether

7

the proposed annexation is reasonable as required by Mississippi Code Section 21-1-33 (Supp. 2025). Pursuant to that statute, the chancellor also has the discretion to grant partial approval of the annexation, excluding any portion of the land proposed for annexation if deemed appropriate. *Gousset v. City of Macon (In re City of Macon)*, 854 So. 2d 1029, 1034 (Miss. 2003). "It is within the prerogative of the chancellor to accept or reject the testimony of any witness, to consider all facts not in dispute, and to make his decision accordingly." *In re City of Southaven*, 5 So. 3d at 380 (citing *In re City of Laurel*, 922 So. 2d 791, 798 (Miss. 2006)).

¶20. As stated above, the chancery court considers twelve factors in determining the reasonableness of annexation under the totality of circumstances. Here, the court found that four factors favored the City.[2] The City challenges the court's findings as to the remaining eight factors, which are discussed below.

### A. Need to Expand

¶21. When determining a city's need for expansion, the chancery court must consider many subfactors, including:

> (1) spillover development into the proposed annexation area; (2) the city's internal growth; (3) the city's population growth; (4) the city's need for development land; (5) the need for planning in the annexation area; (6) increased traffic counts; (7) the need to maintain and expand the city's tax base; (8) limitations due to geography and surrounding cities; (9) remaining vacant land within the municipality; (10) environmental influences; (11) the

---

[2] These four factors were: (2) whether the area sought to be annexed is reasonably within a path of growth of the City; (4) the municipality's financial ability to make the improvements and furnish municipal services promised; (7) whether there are natural barriers between the City and the proposed annexation area; and (8) past performance and time element involved in the City's provision of services to its present residents.

city's need to exercise control over the proposed annexation area; and (12) increased new building permit activity.

*Neal v. City of Winona (In re City of Winona)*, 879 So. 2d 966, 974 (Miss. 2004) (quoting

*In re City of Macon*, 854 So. 2d at 1034).

¶22. The record shows that the City most recently annexed 18.8 square miles in 2021. The City is indeed experiencing internal growth, as evidenced by its building permits and traffic-count data. The City's evidence, including the testimony of Mayor Adams, suggests a slowdown in internal growth. Since 2020, Olive Branch has seen a decline in permits issued for new homes despite the City's 2021 annexation.

¶23. Further, the City offered no proof that it needed any more land than what the Court awarded in 2021. In fact, Slaughter, the city's urban-planning expert admitted "the need for developable land is not a big issue in this case." He also later testified, "It's not about needing vacant land." Slaughter testified that, in his opinion, this factor is not a major issue here because the landowners asked the City to annex their land. The City additionally presented testimony emphasizing the importance of having vacant land within its limits to ensure development followed its own rules and regulations; however, no evidence indicated that DeSoto County's regulations were insufficient. On the contrary, Bridgforth testified that his land had developed successfully while being in the county. He also stated that his land drew potential commercial developments despite not having City services.

¶24. The chancery court found that Tract 2 and Tract 3 were totally vacant tracts and devoid of any residents or development. Thus, Tracts 2 and 3 could not be classified as spillover development. The court recognized that the City had maintained a robust growth

9

(similar to the county) but found that the internal growth since the last annexation was speculative. The court further noted that the evidence indicated a decline in residential building permits over the past three years. Regarding the city's need for developable land, the court stated that City's own expert admitted that the City does not need more vacant, developable land and that DeSoto County has a good zoning and planning department. As for the remaining vacant land within the City, the court noted that "there are hundreds, if not thousands of acres of vacant land within the municipality, courtesy of the City's aggressive annexation of 2021." For these reasons, the court found that this factor did not favor annexation.

¶25. The City argues that the court's decision includes misconceptions of the facts and the law. For example, the City claims that the court improperly based its finding that there is no need to expand on the fact that the land the City sought consists of "totally vacant tracts . . . of any residents or development." *See In re City of Southaven*, 5 So. 3d at 378 (holding that "we assess the municipality's need to expand, which is independent of the character of the land sought to be annexed"). We note, however, that the chancellor relied on this fact as a reason why he found no spillover development in the proposed annexation area. To support its position, the City points to Slaughter's testimony regarding spillover development, which discussed development in close proximity to Tract 2 and Tract 3. But the evidence did not show any encroachment of development into the annexation area.

¶26. The City also argues that the chancery court erred by failing to mention evidence demonstrating increased traffic counts. For reference, Slaughter prepared an exhibit

demonstrating increased traffic counts at locations in the City and near each respective tract from 2012 to 2022. Although the chancellor did not specifically cite all twelve subfactors, his findings in this area considered the City's need for land, the remaining vacant land within the municipality, spillover development, the City's need for developmental land, the City's internal growth, the City's need to exercise control over the proposed annexation area, and increased new-building-permit activity. In addition, witnesses at the hearing testified as to the twelve subfactors. In reviewing the record, we find that chancery court's finding that this factor did not favor the City was based on substantial credible evidence and was not manifestly wrong.

### B. Potential Health Hazards

¶27. In addressing this indicium of reasonableness, this Court has indicated that the following subfactors must be considered in determining this factor: "(1) potential health hazards from sewage and waste disposal; (2) a large number of septic tanks in the area; (3) soil conditions which are not conducive to on-site septic systems; (4) open dumping of garbage; and (5) standing water and sewage." *In re City of Winona*, 879 So. 2d at 979 (quoting *In re City of Macon*, 854 So. 2d at 1038). Here, the chancery court found that all of the tracts sought to be annexed were vacant lots with no evidence of standing water, sewage, or septic tanks.

¶28. The City presented testimony concerning the landowners' anticipated plans to develop their properties. Bridgforth testified that he plans eventually to develop Tract 2 as a single-family residential area. Slaughter testified that it is preferable from a health-hazard

standpoint for residential developments in urban and urbanizing areas such as DeSoto County to develop on centralized sewer such as that offered by the City as opposed to using septic tanks. The Court also heard testimony from Bridgforth regarding the property the Bridgforth family owns in Tract 3 south of Interstate 269. A large portion of that property is zoned C-2 with restrictions. Permitted uses include developments such as hotels, restaurants, service stations, and retail stores.

¶29. The City offered no evidence of open dumping, standing water, or standing sewage. The City did offer evidence within the area to be annexed demonstrating that soil conditions are generally not well suited to accommodate septic tanks. Specifically, Slaughter opined that because the soil in the area is not suitable for septic tanks and since using septic systems would prevent the property from reaching its highest development potential, this factor weights in favor of annexation.

¶30. The record shows that sewer lines are already available to both tracts according to the City's engineer and that each could be developed without annexing the area. Further, the City is not planning to add any sewer lines to serve the tracts being annexed. The evidence provides no indication or suggestion that the tracts proposed for annexation would rely on septic systems or any other type of on-site sewage solution for development.

¶31. The chancery court found that all of the tracts sought to be annexed were vacant lots with no evidence of standing water, sewage, or septic tanks. The court additionally found that although the soil is clearly unsuitable for septic systems, the City had resolved this issue by fulfilling its responsibility as the certified provider of sewage services. Thus, the court

found this indicium was at best neutral toward the reasonableness of annexation. We find that the chancery court's findings are supported by substantial credible evidence.

### C. Need for Zoning and Planning

¶32. For this indicium, the City presented testimony from Slaughter, who evaluated the need for building inspections, zoning and building ordinances, and zoning enforcement. He also reviewed the City's comprehensive plan, its zoning ordinance, as well as DeSoto County's zoning ordinance, zoning map, and comprehensive plan. After considering all of this information, Slaughter admitted DeSoto County has good planning and zoning in place.

¶33. Bridgforth, whose family owns all of the property in Tract 2, testified his area needs municipal regulations and land-use controls. Tract 2 was split by the City's 2021 annexation. Slaughter testified that, from a development standpoint, it is more efficient for a single development to proceed under the same entity, as opposed to partly under the jurisdiction of the City and partly under the jurisdiction of the county.

¶34. The chancery court found that the proposed annexation areas were encompassed within DeSoto County's comprehensive plan and determined that the area "does not call for highly sophisticated planning." The court noted that the comprehensive plan includes a fully staffed planning department, planning commission, building inspectors, code enforcement officers, and geographic information services. Accordingly, the court concluded that the County's comprehensive plan provided services equivalent to those at the municipal level and that this factor weighed against annexation.

¶35. The City argues that the court erred by relying exclusively on evidence from the 2021

13

trial. The City admits that these findings are generally consistent with the evidence presented at the 2021 trial but argues that none of these facts are in the record on appeal. As previously noted, the 2021 opinion was stipulated into evidence during the 2024 trial. The 2021 decree was never appealed, and neither party disputes the court's findings.

¶36. "This Court gives chancellors a wide latitude of discretion in analyzing whether this indicator weighs against annexation." *Poole v. City of Pearl (In re City of Pearl)*, 908 So. 2d 728, 739 (Miss. 2005). Here, the City presented no evidence indicating that DeSoto County's planning and zoning program was in any way unsuitable for the area proposed for annexation. We find that it was not error for the chancery court to consider the 2021 opinion previously stipulated into evidence and to rely on the county's comprehensive plan to conclude that this factor weighted against annexation. Testimony from the City's own expert further confirmed that the county has solid planning and zoning practices. For these reasons, we find substantial credible evidence in the record supported the chancery court's decision.

### D. Need for Municipal Services

¶37. This Court has identified the following factors that the chancery court may evaluate in determining the necessity of municipal services:

> (l) requests for water and sewage services; (2) plan of the City to provide first response fire protection; (3) adequacy of existing fire protection; (4) plan of the City to provide police protection; (5) plan of City to provide increased solid waste collection; (6) use of septic tanks in the proposed annexation area; and (7) population density.

*City of Jackson v. Byram Incorporators*, 16 So. 3d 662, 687 (Miss. 2009) (citing *In re City of Winona*, 879 So. 2d at 984).

14

¶38. As previously stated, Tract 2 and Tract 3 are entirely vacant and undeveloped. Sewer lines are already available to both tracts according to the City's engineer, and each could be developed without the necessity of annexation. Exhibit 90 shows that both tracts fall within the City's certificated water-service area, which obligates the City to provide service even without annexation. Exhibit 91 shows that the City at present has water lines available to both tracts.

¶39. Slaughter testified that City services are "important to allow for areas to develop as its highest and best use, the proper densities, and to meet the services that development demands once complete." But the City offered little evidence regarding development plans for Tract 2. Bridgforth testified that Watson Place Subdivision, lying immediately south of Tract 2, "would eventually one day" expand into Tract 2. Notably, Watson Place Subdivision successfully developed with county-level services. Tract 3 involves two owners; the portion of Tract 3 lying north of Interstate 269 is the Funderburk property, and the southern portion is the Bridgforth property.

¶40. In evaluating this factor, the chancery court noted that gas, water, and sewer services are provided to the tracts regardless of their development. With respect to fire protection, the court recognized that Tracts 2 and 3 are currently served by both the Bridgetown Volunteer Fire Department and the City under an interlocal agreement requiring mutual aid between the two entities. The court further noted that the Bridgetown fire station is geographically closer to these tracts than the City's station. Although the City has a Class 4 fire rating and operates a full-time, paid fire department, the court found that any economic

15

benefit from annexation remains speculative, particularly in light of the uncontroverted testimony that Tracts 2 and 3 are vacant and lack any concrete development plans at this time.

¶41. As part of its analysis, the court incorrectly stated that the proposed annexation includes territory within a statutorily created fire-protection district that holds the exclusive right, under Mississippi Code Section 19-5-175 (Rev. 2024), to provide fire protection within its boundaries. The Bridgetown Volunteer Fire Department is a graded fire district, not a statutorily created fire-protection district. Testimony established that this distinction means the City would automatically obtain the legal authority to provide first-response fire protection in the proposed annexation areas if annexed. The City argues that this misstatement constituted manifest error. We disagree. Although the court misstated this fact, it was not the linchpin of its conclusion on this subfactor. Instead, the court relied on the existence of mutual-aid agreements between the fire departments and noted that, given the minimal economic impact, little need appeared to exist for additional fire services beyond those already available.

¶42. With respect to police protection, the Court noted that the municipality plans to provide immediate police services to the proposed annexation area if the annexation is approved. Based on the size and composition of the City's police force, the court acknowledged that the City's police protection would, on its face, appear superior to that offered by the county. But, as detailed in the court's opinion from the 2021 annexation trial, which was entered into evidence, the DeSoto County Sheriff's Department is unique among

16

county law enforcement agencies because its resources and services are at least equivalent to those typically provided by a municipal police department. The City contends that the chancery court committed manifest error in making these findings, arguing that the underlying evidence was not presented at the 2024 trial. The City stipulated to the admission of the 2021 decree into evidence, however, and that decree contains factual findings on which the court properly relied in evaluating this subfactor.

¶43. Finally, with regard to the issue of population density, the court reiterated that these tracts are completely vacant and recognized that "[i]n sparsely populated areas, this Court has found that 'there is less of a need for immediate municipal services' than densely populated areas." *In re City of Winona*, 879 So. 2d at 984 (quoting *In re City of Macon*, 854 So. 2d at 1041-42). After analyzing all of the subfactors, the court found these areas were not in need of the "full spectrum of City services" and therefore weighed this factor against annexation. The chancellor's findings are supported by substantial credible evidence in the record.

### E. Economic Impact

¶44. In evaluating this factor, the chancery court must weigh the equities between the City's need for expansion and the potential benefits to residents from the annexation, while also considering any adverse impacts, economic or otherwise, that the residents may experience. *City of Jackson v. City of Ridgeland (In re City of Jackson)*, 551 So. 2d 861, 868 (Miss. 1989). Though the residents of the proposed area of annexation will, if annexed, be required to pay city taxes, that issue alone is insufficient to defeat annexation. *Id.*

17

¶45. Here, the court found that in return for their tax money, the areas will not receive proportionately better police or fire protection than they already receive from the county. The court additionally found that the proposed areas of annexation will not receive additional water, sewer, or gas services, as those have already been extended by the City under its obligation within the certificated service areas. The court noted that planning and zoning regulations will largely remain unchanged. Although the City has proposed the addition of street lighting, a service not currently provided by the county, the court found that any reduction in fire-insurance premiums is speculative at best, given the lack of concrete development plans for Tracts 2 and 3. In balancing the burden of increased taxation against the limited municipal services to be provided, the chancery court found the annexation to be unreasonable and accordingly weighed this factor against annexation.

¶46. The City takes issue with the court's findings regarding fire protection and police protection. Further, the City argues that the court failed to take into account that the landowners who requested annexation testified that they want to receive the full benefit of City services, including police and fire. We find, however, that the chancery court's decision is supported by substantial credible evidence. As previously discussed, the City is already obligated to provide water, gas, and sewer services, and the record shows that the county provides quality fire protection and police protection to these areas.

### F. Voting Strength

¶47. The City offered Exhibit 26 indicating both tracts sought to be annexed contained no population. Slaughter opined that due to the lack of population, minority-voting strength was

not impacted and thus this factor supported annexation.  This Court has found, however, that when an annexation area is without any population, the protection-of-minority-voting strength factor is rendered neutral.  *City of Horn Lake v. City of Southaven (In re City of Southaven)*, 864 So. 2d 912, 925 (Miss.  2003).  Thus, the chancery court found this factor to be neutral as it relates to both tracts sought to be annexed.  We find that the chancery court appropriately followed this Court's precedent and therefore did not commit manifest error.

### G.    Fair Share of Taxes

¶48.    For this factor, the chancery court found that there are no residents in these proposed areas of annexation to whom this indicium would apply.  The court additionally found that "there is no evidence that the existing owners likewise have enjoyed the economic or social benefits of the City without paying their fair share of taxes."  The court therefore weighed this factor against annexation.

¶49.    "The value of this item as an indicator of reasonableness is questionable because it is difficult to envision a situation where an individual's 'fair' share of taxes is greater than the amount required by law."  *Robinson v. City of Columbus (In re City of Columbus)*, 644 So. 2d 1168, 1180 (Miss. 1994).  Stronger here, the evidence established that the proposed annexation area is completely vacant.  Exhibit 44 is the existing land-use map for the proposed area and indicates there are no habitable structures on either tract.  Thus, these areas currently lack a population to receive or benefit from City services or amenities.  We find that the chancellor did not commit manifest error by weighing this factor against annexation.

### H. Other Factors

¶50. The court acknowledged the City's argument that the property owners of both tracts desired to be annexed and that such support should factor into the reasonableness analysis. The court agreed that the preferences of landowners may be considered but clarified that such preferences should carry no more weight than the objections of those opposing annexation. According to the court, all landowners, either directly or through representatives, expressed that their desire for annexation stemmed from a perceived need for municipal services. But the court found that there was little, if anything, that the City could offer in terms of services that were not already being provided by the county or by the City itself under existing obligations in certificated areas.

¶51. The court noted that the owner of property south of Interstate-269 within Tract 3 had expressed interest in future commercial development, but the Court found no evidence of concrete or imminent plans. The Court further noted the objectors' concern that the inclusion of Tract 3 may have been a veiled attempt to circumvent the county's zoning restrictions, specifically, to allow the construction of a Love's Truck Stop.

¶52. The evidence showed that while the county previously had rezoned approximately sixty-five acres in Tract 3, it imposed conditional-use restrictions prohibiting showers and overnight parking, which the owner initially accepted. After Love's expressed interest in the property contingent on those restrictions' being lifted, however, the owner sought to remove them. The county declined, resulting in the collapse of the deal. Although the owner denied any ongoing effort to develop the property for Love's, the court found that if annexed, the

20

owner could seek a zoning change through the City. The court recognized that the objectors, who previously participated in the zoning process, would have no vote in the matter, as they are not City residents. The court determined this to be a relevant factor in the overall reasonableness analysis.

¶53. The Court also credited the objectors' argument regarding the jurisdictional issues of annexing Tracts 2 and 3. The court agreed that the only access roads, Pleasant Hill Road and Laughter Road, require multiple crossings between City and county jurisdictions and would create confusion for emergency response and complicate traffic enforcement. The City's own planning expert acknowledged that the jurisdictional boundaries would create opportunities for "speed traps," in which short stretches of City-controlled roadway could be radar patrolled while surrounded by county territory. The court emphasized that, currently, travel from the City to Tracts 2 and 3 requires repeatedly entering and exiting City and county jurisdictions. The court noted that this type of fragmented access has previously been held to weigh against annexation. *See **Wise v. City of Biloxi (In re City of Biloxi)***, 361 So. 2d 1372 (Miss. 1978). The chancellor implicitly questioned the credibility of the City's planning expert, Slaughter, by noting that his testimony had been thoroughly impeached due to inconsistent statements he made in a prior case, ***Coahoma County v. City of Clarksdale (In re City of Clarksdale)***, 267 So. 3d 236 (Miss. 2019).

¶54. Significantly, the court found here that it could not assess the reasonableness of the current annexation petition without considering the annexation granted just nineteen months earlier. The court stated that the 2021 annexation followed an eight-day trial, during which

21

the City argued for the need for additional land and faced opposition from numerous parties, including local residents, DeSoto County, the Bridgetown Fire District, and the City of Hernando. Following the trial, the court approved annexation of nearly twenty square miles, while explicitly excluding Tracts 2 and 3. Despite the exclusion of those areas, neither the City nor the landowners requested reconsideration. The court found no meaningful changes since that time other than the landowners' desire for annexation.

¶55. While recognizing that annexation petitions are not barred by res judicata and that cities may seek annexation whenever they believe it to be reasonable, the court found it appropriate to consider the recentness of the prior annexation and the City's current obligations under that decree in evaluating reasonableness. *See **In re City of Indianola***, 226 Miss. 760, 85 So. 2d 212 (1956).

¶56. The court emphasized that the City is still in the midst of implementing the 2021 Plan of Services, which covers nearly twenty square miles, approximately six thousand new residents, and 2,300 homes. Ultimately, the Court concluded that the current annexation request is speculative, lacks urgency, and appears to stretch the City's resources beyond what is now feasible. The Court expressed skepticism over the City's motivation to take on additional territory without having fully completed service implementation from the 2021 annexation.

¶57. The City contends that the chancery court improperly applied principles of res judicata by repeatedly referencing and relying on the 2021 annexation in evaluating the 2022 petition. The court expressly acknowledged, however, that res judicata did not bar the City from

seeking annexation of Tracts 2 and 3 in the 2022 proceeding. We find no error in the court's consideration of the recent annexation history as part of its overall reasonableness analysis. The prior annexation was appropriately viewed as one factor among many under the totality of the circumstances and was not treated as dispositive.

> **2.** **Whether the chancery court committed reversible error by encroaching on the authority of the City's board of aldermen to decide when to seek annexation.**

¶58. The City argues that the chancery court improperly considered the timing between the annexation petitions and, in doing so, applied an incorrect legal standard by "usurp[ing] the exclusively legislative function of determining whether to pursue annexation . . . ." *In re City of Sardis*, 954 So. 2d 434, 438 (Miss. 2007). The City specifically challenges the chancellor's closing remarks under factor twelve:

> In the American South, and particularly in Mississippi, it is considered improper etiquette to ask for seconds during a meal without consuming the first serving. Perhaps this should be considered to some extent in municipal annexations as here.

¶59. While the City focuses on this analogy, the record makes clear that the chancellor considered the 2021 annexation in conjunction with all the other evidence before him, as reflected in his lengthy and detailed opinion. Specifically, the chancellor observed that "[t]he extent of development in the proposed areas encompassing Tracts [2 and 3] are speculative at best and there appears no rush to provide any services from the City except the stretching of the municipal police department in addition to what the City has already undertaken."

¶60. We find that the chancellor acted within his discretion in weighing the timing of the annexation, particularly in light of the fact that the City had recently annexed nearly twenty

23

miles of land, much of which remains vacant, and now seeks to annex additional undeveloped land just nineteen months later. Moreover, even if an error occurred, it would be harmless in light of the substantial evidence supporting the chancellor's conclusion that annexation was unreasonable.

## CONCLUSION

¶61. Given the significant deference afforded to the chancery court in annexation matters, we cannot say the chancery court committed manifest error by finding this annexation unreasonable. Substantial credible evidence in the record supported the court's findings. When such evidence exists, this Court "must resist the temptation to substitute [its] judgment for that of a Chancellor, even though [it] may have found otherwise, had any one of us been the trial judge." *In re City of Laurel*, 922 So. 2d at 796. Accordingly, this Court affirms the chancery court's judgment.

¶62. **AFFIRMED.**

**RANDOLPH, C.J., KING, P.J., AND SULLIVAN, J., CONCUR. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRANNING, J. COLEMAN, P.J., NOT PARTICIPATING.**

**GRIFFIS, JUSTICE, DISSENTING:**

2. **Whether the chancery court committed reversible error by encroaching on the authority of the City's board of aldermen to decide when to seek annexation.**

¶63. Under Mississippi law, the legislative branch of government has the exclusive authority to set annexation procedures and to determine when to exercise its sole authority to adopt an annexation ordinance. "[A]nnexation is a power belonging solely to the

24

Legislature." ***In re City of Sardis***, 954 So. 2d 434, 437 (Miss. 2007) (citing ***Poole v. City of Pearl (In re City of Pearl)***, 908 So. 2d 728, 730 (Miss. 2005)). "The adoption of an ordinance by a municipality expressing its intent to expand its boundaries is purely a legislative matter . . . ." ***City of Jackson v. Town of Flowood***, 331 So. 2d 909, 911 (Miss. 1976). Also, this Court has held that a chancellor applies an incorrect legal standard constituting reversible error by "usurp[ing] the exclusively legislative function of determining whether to pursue annexation[.]" ***In re City of Sardis***, 954 So. 2d at 438.

¶64. Here, the chancellor considered the twelve indicia of reasonableness established by this Court and considered the "totality of the circumstances." ***City of Jackson v. City of Madison (In re City of Madison)***, 650 So. 2d 490, 494 (Miss. 1995) (internal quotation mark omitted) (quoting ***Robinson v. City of Columbus (In re City of Columbus)***, 644 So. 2d 1168, 1172 (Miss. 1994)); ***Lamar Cnty. v. City of Hattiesburg (In re City of Hattiesburg)***, 840 So. 2d 69, 81-82 (Miss. 2003). The chancellor clarified, however, that he also gave significant consideration to Olive Branch's prior unsuccessful annexation attempt in 2021. Several times in the opinion, the chancellor mentioned that the subject parcels were included within the portion of an annexation the court had declined to award in 2021. The chancellor also made the statement that "[i]n the American South, and particularly in Mississippi, *it is considered improper etiquette to ask for seconds during a meal without consuming the first serving*. Perhaps this should be considered to some extent in municipal annexations as here." After this statement, the chancellor continued to list "the fact that the City requested these parcels in its immediate past annexation of 2021 and was denied" as one of the reasons why it found

25

annexation of the areas in question unreasonable.

¶65. A city's legislative governing body has the exclusive authority to determine when annexation is required by the public convenience and necessity. *See* Miss. Code Ann. § 21-1-33 (Supp. 2025); ***Bassett v. Town of Taylorsville***, 542 So. 2d 918, 920 (Miss. 1989). A finding by a city's legislative governing authority that annexation is required by the public convenience and necessity is beyond judicial review. ***Ritchie v. City of Brookhaven (In re City of Brookhaven)***, 217 Miss. 860, 65 So. 2d 832, 833 (Miss. 1953). There is no required waiting period. A city may pursue annexation when and as often as it deems enlargement is required by the public convenience and necessity. *See **In re City of Indianola***, 226 Miss. 760, 85 So. 2d 212, 214 (1956). Thus, no basis in law existed for the chancellor to consider "the fact that the City requested [Tracts 2 and 3] in its immediate past annexation of 2021 and was denied" as a specific reason it found the annexation of these parcels unreasonable here. This is an encroachment and a violation of separation of powers that should result in reversal.

¶66. The Olive Branch Board of Aldermen adopted an annexation ordinance when it found expansion to be required by the public convenience and necessity. Thus, the chancellor applied an erroneous legal standard by "usurp[ing] the exclusively legislative function of determining whether to pursue annexation . . . [,]" ***In re City of Sardis***, 954 So. 2d at 438, and basing its denial on the timing of Olive Branch's decision to pursue annexation following the City's prior annexation. Only the Olive Branch Board of Aldermen has the authority to decide when it is convenient and necessary for the City to pursue annexation. That decision is beyond judicial review.

26

¶67. As a result, I find that the chancellor's decision—that annexation was impermissible because it amounted to poor manners or was sought too soon after the City's prior annexation—constitutes reversible error.

**BRANNING, J., JOINS THIS OPINION.**